In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3333

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOSE FIGUEROA, also known as
JOSE FIGUEROA-MALDANADO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CR-217—**Rudolph T. Randa**, *Judge.*

ARGUED APRIL 20, 2010—DECIDED SEPTEMBER 13, 2010

Before FLAUM, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* There was little out of the ordinary in Jose Figueroa's trial and conviction. Figueroa was charged with leading a multimillion-dollar drug conspiracy in Wisconsin from 2005 to 2008. A jury convicted him of one count of conspiracy to possess cocaine with the intent to distribute it and one count of distribution of cocaine. Although he challenges one

evidentiary decision in this appeal, we find no merit in that argument.

Figueroa's sentencing was another matter. The district court sentenced Figueroa to 235 months' imprisonment. This represented the low end of Figueroa's advisory guidelines range, and so on its face there is nothing remarkable about his sentence either. But the process the district court used to get there—in particular, its extraneous and inflammatory comments during the sentencing hearing—cast doubt on the validity of the sentence. During the hearing, the district court digressed to discuss Figueroa's native Mexico, the immigration status of Figueroa and his sisters, and the conditions and laws in half a dozen other countries—not to mention unnecessary references to Hugo Chávez, Iranian terrorists, and Adolf Hitler's dog. We have no way of knowing how, if at all, these irrelevant considerations affected Figueroa's sentence. We therefore must remand, to ensure that the district court's choice of sentence was based only on the criteria that Congress has authorized. See 18 U.S.C. § 3553.

# I

In late 2007, the government became aware of Figueroa's involvement in a large drug conspiracy in and around the state of Wisconsin. Figueroa, it discovered, was the head of an organization that distributed millions of dollars of cocaine over a period of years.

The government's key source of information was Rodney Smith. Smith dealt drugs for Figueroa before

Smith's incarceration in 2005. After his release the next year, Smith agreed to cooperate with the government; his cooperation was to include providing the government with information about Figueroa's drug business. This arrangement bore fruit when Figueroa reached out to Smith in 2008 to resume Smith's role in Figueroa's operation. Smith was in contact with Figueroa and his associates in the spring of 2008, and under the watchful eyes of the government, he received cocaine to distribute and made payments back to Figueroa's crew for the drugs he presumably had sold. Smith wore a recording device during a number of these encounters, and the devices picked up conversations with Figueroa during which Figueroa made inculpatory statements about his role in the drug conspiracy.

The controlled communications, purchases, and payments yielded enough for the government to go after Figueroa's drug operation. Officers arrested him outside his home on July 31, 2008, pursuant to an arrest warrant issued earlier that week. The officers commanded Figueroa to get on the ground, advised him of his *Miranda* rights, and placed him in handcuffs. During this encounter, at least one of the officers had his gun drawn. Miguel Correa, one of the officers on the scene, then explained to Figueroa that he was arrested and asked for permission to enter his home. Figueroa agreed. Once inside, one of the officers asked Figueroa's wife if they could sweep the residence to determine if anyone else was there. As one officer moved through the home, another obtained Figueroa's verbal and written

consent to search the entire residence. During this time, Figueroa was seated uncuffed at the kitchen table.

The search of Figueroa's home turned up $54,540 in cash. (Later, Figueroa filed a pretrial motion to suppress this evidence.) Separately, officers recovered drugs linked to Figueroa at the home of one of his associates. In addition, at trial, Smith and Figueroa's co-defendant, Lilliam Torres, offered testimony that linked Figueroa to the drug conspiracy.

Figueroa was convicted of one count of conspiracy to possess with the intent to distribute five or more kilograms of cocaine, 21 U.S.C. § 841(a)(1) & (b)(1)(A) and § 846, and one count of distribution of cocaine, *id.* § 841(a)(1) & (b)(1)(C). The district court sentenced Figueroa to 235 months' imprisonment. Figueroa appeals, challenging the district court's refusal to suppress the fruits of the search and his sentence.

## II

We begin with the search. Before trial, Figueroa asked the district court to suppress the evidence found in his home because, in his view, the police coerced him to consent to their search of the premises once they had entered. A magistrate judge rejected this argument, concluding that Figueroa voluntarily consented to the search. The district court adopted the magistrate judge's ruling. On appeal, Figueroa has changed his argument slightly; he now contends that he never consented to the officers' initial entry into his home. This new argument fares no better than the previous iteration.

Typically, on challenges to evidentiary decisions, we review factual determinations for clear error and legal questions *de novo*. If a party filed a motion to suppress in the district court but raises new arguments for suppression on appeal, however, we review for plain error if the defendant can show good cause for failing to make those arguments in the district court. See *United States v. Murdock*, 491 F.3d 694, 698 (7th Cir. 2007) (citing FED. R. CRIM. P. 12(e) and *United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir. 2005)); see also *United States v. Acox*, 595 F.3d 729, 732 (7th Cir. 2010) (asking, in the absence of a district-court decision on good cause, "if a motion for relief had been made and denied, [whether] the district court would have abused its discretion in concluding that the defense lacked good cause").

Figueroa's argument fails at every turn. First, he has not established good cause for failing to argue in the district court that his consent to the officers' initial entry was involuntary. Second, even if he passed that threshold, Figueroa is unable to establish that the district court erred—let alone plainly erred—in permitting the government to introduce evidence obtained from his home. Consent is a well-established exception to the warrant requirement, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and we have held that an arrested, handcuffed suspect is capable of giving voluntary consent to the search of his home, *United States v. Bernitt*, 392 F.3d 873, 876-77 (7th Cir. 2004). Figueroa conceded during cross-examination at the evidentiary hearing that he had consented to both the initial entry and the fuller search inside:

Q: After you were arrested [outside of your home] did the officers ask you if they could come into your house?

A: Yes.

Q: Which officer asked you if they could enter your house?

A: Correa.

Q: Correa. And what did you say to Officer Correa?

A: That yes.

Q: And then what happened after you—so you gave him permission, correct?

A: Yes.

Q: And then what happened?

A: He asked permission to go in and I told him to knock, that my wife would open the door for him.

Q: Is that what happened?

A: Yes.

If anything here is plain, it is Figueroa's concession. Officer Correa also testified that Figueroa consented to the entry.

Nothing in the record suggests good cause for Figueroa's failure to raise this point earlier; nor do we detect any plain error. We conclude that the evidence was properly admitted; because Figueroa does not challenge any other aspect of his conviction, we affirm the guilty verdict.

## III

Figueroa also challenges his sentence. Defendants may bring challenges to both the sentencing procedure and the resulting sentence's substantive reasonableness. *United States v. Cooper*, 591 F.3d 582, 590-91 (7th Cir. 2010). Figueroa raises only procedural objections.

In cases such as *Gall v. United States*, 552 U.S. 38 (2007), and *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court established a framework for sentencing in the federal courts. Briefly, the district court begins by calculating the advisory guideline range, and then it applies the sentencing factors set out in 18 U.S.C. § 3553(a) to arrive at a reasonable sentence. District courts must explain their sentencing decisions to permit meaningful appellate review.

In this case, the sentencing transcript reveals an extended discussion of topics that are both outside of the record and extraneous to any proper sentencing consideration. In our view, the district court's lengthy and disconnected lecture saps any confidence we could have in the portions of the hearing that hewed to the § 3553(a) factors.

We do not think it is necessary to rehash every detail of Figueroa's sentencing hearing; a few examples are enough to illustrate what went wrong. Figueroa is of Mexican descent, and the district court made a number of comments about Mexico and its perception of Mexico's contribution to drug and immigration issues in the United States. "The southwest is being over-whelmed," the judge remarked, and he went on to

lament the factors that he believes motivate immigration to the United States. The judge also commented on the immigration status of Figueroa, his wife, and his three sisters. At various points, he lashed out at illegal immigration, occasionally referring to "you people" or "those people." (Figueroa understood these comments to refer to persons of Mexican origin, although it is possible that the district court was referring to illegal immigrants or immigrants more generally.)

The sentencing transcript reveals an odd focus on nation-states and national characteristics. The district court linked the drug trade to Mexico, then to Colombia and Venezuela, and then to Iranian terrorists through the person of Venezuelan President Hugo Chávez. The judge commented that respect for the rule of law differentiates the United States from Mexico, Venezuela, Iran, and Pakistan. Turning to punishment, he remarked that Figueroa should be happy that he was headed to an American—rather than a Mexican or Turkish—prison, and that Figueroa's conduct could have resulted in execution had it occurred in Malaysia or Thailand.

The transcript also reveals the district court judge's use of colorful—and inappropriate—analogies to dispense with arguments that he did not appreciate. Rejecting Figueroa's wife's comment that the sentence was unfair, he said that "[i]t reminds me of . . . the person who killed his parents . . . asking [the judge] to have sympathy for him because he's an orphan." The judge appears to have been referring to the "classic definition of *chutzpa*," LEO ROSTEN, THE JOYS OF YIDDISH 94 (1971), but this is a term that does not apply to a wife's assertion

that her husband's incarceration will harm the family. Later, the judge discounted Figueroa's claim that he was a good family man: "even Adolf Hitler was admired by his family. Adolf Hitler loved his dog. Yet he killed six million Jews."

We understand that sentencing is an individual, and at times idiosyncratic, process. And we recognize that the district court judge may have been frustrated by Figueroa's lack of remorse and his arguments about the unfairness of his predicament. But this does not excuse the court from its duty to ensure a fair process. At sentencing, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. We conclude that the district court fell short of this requirement. It is true that the district court made references to the § 3553(a) factors and to the arguments based on them that defense counsel raised, but the litany of inflammatory remarks undermined anything else that the court said during the hearing. Although we typically do not require an exhaustive explanation when the court chooses a sentence within the recommended guideline range, see *United States v. Dean*, 414 F.3d 725, 729-30 (7th Cir. 2005), the fact that Figueroa received a within-guidelines sentence does not make up for these inflammatory statements. We have no way of knowing how, if at all, these extraneous considerations influenced Figueroa's sentence. It is no answer to say that the judge chose a guidelines sentence and thus all was well; for all we know, setting his private views to one side the court may have thought that a below-guidelines sentence was ap-

propriate. We are unpersuaded by the government's argument that the discussion of the Mexican drug wars was sufficiently germane to the underlying conduct to support the sentence. If these were the only extraneous comments, then we might give the district court the benefit of the doubt. They were not. We conclude that the district court's process was so far out of bounds that Figueroa is entitled to resentencing. We emphasize, however, that we are taking no position on the substantive reasonableness of the 235-month sentence that Figueroa received.

For completeness, we note that Figueroa has framed his challenge as an allegation of national-origin discrimination. See, *e.g.*, *United States v. Kaba*, 480 F.3d 152, 156-58 (2d Cir. 2007); see also U.S.S.G. § 5H1.10 (forbidding consideration of national origin in sentencing). Although the district court may have made one or two comments that overemphasized national origin, this sentencing hearing had problems across the board. We need not decide if these references to national origin, standing alone, would require reversal.

Figueroa's brief in this court also has traces of a challenge to the district court's drug-quantity determination, see U.S.S.G. § 2D1.1, insofar as it raises questions about the credibility of witness Rodney Smith. We find this argument to be insufficiently developed to merit consideration. See, *e.g.*, *Trentadue v. Redmon*, 2010 WL 3239397, at *5 (7th Cir. Aug. 18, 2010). Even if it had been properly developed, we find enough in the record to support the drug-quantity finding. Indeed, during oral argument, counsel for Figueroa conceded that the district court

adopted the findings in the presentence investigation report, including its conclusion about the quantity of drugs connected with Figueroa's relevant conduct. Although the district court could have spent more time discussing the drug quantity and less time on the extraneous topics reviewed above, we see no reason to upset its decision that Figueroa was responsible for more than 50 kilograms of cocaine.

## IV

Figueroa challenged an evidentiary decision and his sentence. We have no problem with the district court's conclusion that Figueroa consented to the search of his home, and we therefore see no error in the court's decision to admit the evidence found by the police. As for his sentence, we conclude that the evidence was sufficient to establish the drug quantity and the original guidelines calculation. We do not disturb those conclusions. But we find that resentencing is necessary to evaluate those factors that Congress has told us should inform the length of the sentence. See 18 U.S.C. § 3553(a). We would not lightly interfere with the sentencing process because of extraneous comments during a sentencing hearing. Here, however, the comments were utterly out of bounds, and we have no way of assessing how these improper observations affected the district court's final choice of a sentence.

For these reasons, we AFFIRM Figueroa's conviction, VACATE his sentence, and REMAND for further proceedings consistent with this opinion. On remand, Circuit Rule 36 shall apply.

EVANS, *Circuit Judge*, concurring. Judges sometimes get carried away and say things they should not say. I agree with my colleagues that the judge in this case said things that he should not have said. And what was said, I agree, marred the procedural aspects of Figueroa's sentencing proceeding.

Having said that, however, I do not think that what the judge actually did, as opposed to what he said, demonstrated an intent to lay the wood to Figueroa or otherwise treat him unfairly. The sentence the judge imposed, which was at the lowest point of Figueroa's advisory guideline range, looks to be reasonable. If the judge truly wanted to stick it to Figueroa, he could have said nothing out of the ordinary and imposed a sentence, still within the guideline range, that was 58 months longer than the one actually ordered. With that being the case, we might very well have a no harm-no foul situation. Yet Figueroa is entitled, procedurally, to a cleaner hearing than the one he got so I join my colleagues in returning this case to a new judge for a fresh hearing.