NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3267
_____

UNITED STATES OF AMERICA

v.

GEORGE N. GREENE, JR.,
                            Appellant

_____

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas and St. John
D.C. Criminal No. 3-09-cr-00032-001
(Honorable John E. Jones III)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 11, 2011

Before:  SCIRICA, RENDELL and AMBRO, *Circuit Judges*.

(Filed  June 17, 2011 )
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

George Greene, Jr., a sergeant with the Virgin Islands Police Department, was

convicted after a jury trial on two charges of unlawful possession of firearms with

obliterated serial numbers in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). The

court sentenced Greene to concurrent 30-month terms of imprisonment followed by two years' supervised release and imposed a $100 special assessment on each count. We will affirm.

## I.

Greene was arrested on August 4, 2009, after a grand jury in the District of the Virgin Islands indicted him and two co-defendants. In conjunction with Greene's arrest, federal law enforcement officials executed a search warrant on his police vehicle. The agents discovered two handguns with obliterated serial numbers hidden in a shaving kit in Greene's personal backpack. The backpack also contained ammunition suited to those particular firearms, a black ski mask, a book titled "The Art of Deception: An Introduction to Critical Thinking," and a DVD titled "Barry Cooper's Never Get Busted Again." In a voluntary statement furnished following his arrest, Greene told law enforcement he would occasionally masquerade as a corrupt officer for intelligence-gathering purposes.

The superseding indictment charged Greene with fifteen counts, and the District Court granted Greene's motion to sever Counts Twelve and Thirteen, which alleged violations of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). At the trial on those two counts, Greene testified he came into possession of the firearms, which had no paperwork or tags associated with them, in the regular course of his work in the Forensics Unit. He also testified he placed the guns in his backpack with the intent of turning them over to Corporal Alvaro de Lugo, an agent allegedly designated as the VIPD liaison to the U.S.

2

Bureau of Alcohol, Tobacco and Firearms. Greene's trial counsel attempted to elicit testimony about Greene's prior dealings with de Lugo, but the District Court concluded Greene could not proffer an adequate foundation for such testimony and sustained the government's objection to that line of questioning. The court also denied Greene's request for a jury instruction that would have permitted the jury to convict only if it found Greene had been acting outside the scope of his law enforcement duties while in possession of the firearms.

The jury found Greene guilty on both counts.[1] Greene filed a motion for a new trial, alleging his brother had been excluded from the *voir dire* of prospective jurors in violation of his Sixth Amendment right to a public trial. The District Court denied the motion and sentenced Greene as indicated above. Greene timely appealed.[2]

II.

A.

---

[1] Following a separate jury trial in the related case from which these two charges were severed, Greene was convicted on six other counts included in the superseding indictment: (1) conspiracy to commit extortion, in violation of 18 U.S.C. § 1951(a); (2) extortion, in violation of 18 U.S.C. §§ 1951(a) and 2; (3) conspiratorial extortion, conflict of interest, and solicitation and receipt of a bribe, in violation of 14 V.I.C. § 551; (4) extortion under color of official right, in violation of 14 V.I.C. §§ 701 and 11; (5) conflict of interest, in violation of 3 V.I.C. §§ 1102(3) and 1108, and 14 V.I.C. § 11; and (6) solicitation and receipt of a bribe, in violation of 14 V.I.C. §§ 403 and 11. The court sentenced Greene to a 36-month term of imprisonment on the federal charges (Counts 5 and 6), to be served concurrently with the 36-month term imposed on the territorial charges (Counts 7 through 10).

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over the court's final decision under 28 U.S.C. § 1291.

Greene argues the court erred when it denied his motion for a new trial under Fed. R. Crim. P. 33.[3] Greene claimed his Sixth Amendment right to a public trial was violated when a court security officer (CSO) temporarily excluded his brother, Curtis Fredericks, from the courtroom on the morning of January 20, 2010.[4] At an evidentiary hearing, CSO Hyram Graneau testified he excluded Fredericks for want of seating space in the courtroom.[5] Significantly, Graneau testified the trial judge was not on the bench when the

---

[3] "Ordinarily, we review a denial of a motion for a new trial under an abuse of discretion standard." *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). "[A] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *Planned Parenthood of Central N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 265 (3d Cir. 2002). Our review is plenary, however, when the court's denial was "based on the application of legal precepts." *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994).
[4] Greene and his two co-defendants moved for a new trial on analogous grounds following their convictions on the counts from which these two firearms charges had been severed. Chief Judge Gomez, who presided over the extortion trial, held an evidentiary hearing and took sworn testimony. With the record complete, the parties declined to present additional testimony or argument relative to Greene's unique Rule 33 motion. At the evidentiary hearing, Fredericks alleged he had been excluded in identical fashion on the morning of January 25, 2010. *See United States v. Saldana*, Crim. No. 2009-32, 2010 U.S. Dist. LEXIS 75019, at *6 (D.V.I. July 25, 2010). Although Fredericks claimed to have been excluded from "jury selection," the court found the record indicated he had probably been denied access only to "jury attendance," an administrative undertaking performed by courtroom personnel prior to the judge being called to the bench during which jurors receive their Juror Numbers. *Id.* at *17, 21. The court found no authority supporting an extension of the Sixth Amendment "to a non-judicial event preceding trial, such as jury attendance." *Id.* at *21. Similarly, Fredericks "guess[ed]" he had been permitted to enter the courtroom on January 20 after the completion of "jury selection." Nevertheless, our conclusion that the partial closure was not of constitutional significance renders immaterial the factual question of whether Fredericks was inadvertently excluded from the *voir dire* on January 20.
[5] CSOs are employed by private companies working under contract with the U.S. Marshal Service and are not part of the judiciary.

exclusion occurred. Greene placed no objection as to the alleged exclusion on the record during trial.[6]

In his motion, Greene relied principally on *Presley v. Georgia*, --- U.S. ----, 130 S. Ct. 721 (2010), a *per curiam* opinion handed down two days before the jury returned its verdict in this case. In *Presley*, the Supreme Court held the Sixth Amendment extends to the *voir dire* of prospective jurors and concluded a defendant's right to a public trial had been violated by the trial court's exclusion of his uncle from the proceeding. *Id.* at 722, 724-25. Here, the trial judge wrote:

> The glaring, significant difference between *Presley* and the case *sub judice* is that in *Presley*, the trial judge excluded the public from the courtroom during jury selection. Here, the exclusion of the public from *voir dire* was undertaken, apparently unilaterally, by the court security staff at the St. Thomas, United States Virgin Islands Federal Courthouse. This distinguishing fact resolves the instant Motion. While it is regrettable that Greene's brother was excluded from the Courtroom during jury selection by the CSO, the CSO's exclusion of Fredericks cannot and should not be imputed to this Court. It is the Court's view that the Supreme Court did not intend the holding of *Presley* to be extended to unilateral actions taken by court security staff about which the trial judge was completely unaware. We thus perceive no error of constitutional proportions and thus no basis whatsoever to afford Greene a new trial premised upon this unfortunate, but *de minimus*, breach.

The court expressed confidence court security officers would "no longer exclude the public from jury selection" following the two days of hearings conducted with respect to

---

[6] The government styles Greene's failure to object a waiver forfeiting his right to a public trial. Because we find the partial closure did not amount to a constitutional violation, we need not decide whether Greene waived his Sixth Amendment rights.

the merits of these motions.[7]

In general, the denial of a defendant's right to a public trial is a "structural error"—i.e. a defect "affecting the framework within which the trial proceeds"—requiring reversal irrespective of whether the defendant demonstrates the error prejudiced his substantial rights. *See Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (canvassing cases and delineating the scenarios in which structural errors have been recognized). "It does not necessarily follow, however, that every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution or requires reversal of the conviction, no matter how brief the deprivation or how trivial the proceedings that occurred during the period of deprivation." *Gibbons v. Savage*, 555 F.3d 112, 120 (2d Cir. 2009), *cert. denied*, --- U.S. ----, 130 S. Ct. 61 (2009). That is, "not every improper partial closure implicates [Sixth Amendment] concern[s]." *Brown v. Kuhlmann*, 142 F.3d 529, 536 (2d Cir. 1998); *see also Bowden v. Keane*, 237 F.3d 125, 129 (2d Cir. 2001) (explaining that a defendant's right to a public trial "is not trammeled, for example, by a trivial, inadvertent courtroom closure"); *Braun v. Powell*, 227 F.3d 908, 919 (7th Cir. 2000) (holding the exclusion of one spectator from an entire trial "does not implicate the policy concerns that inform the Sixth Amendment's right to an open trial").

Whether a particular closure abridges a defendant's Sixth Amendment rights hinges on its potential to undermine the values advanced by the public trial guarantee,

---

[7] Greene contends this was not an isolated incident. However, the court solicited testimony from court staff and court security officers during the evidentiary hearing and

which include (1) ensuring a fair trial; (2) reminding the government and the judge "of their responsibility to the accused and the importance of their functions"; (3) encouraging witnesses to come forward; and (4) discouraging perjury. *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996). In *Peterson*, for example, the Second Circuit held a closure that was "1) extremely short, 2) followed by a helpful summation, and 3) entirely inadvertent" did not, in that instance, violate a defendant's Sixth Amendment rights. 85 F.3d at 44. Additionally, "the exclusion of a family member or friend may, in rare circumstances . . . , not implicate the Sixth Amendment public trial guarantee." *Carson v. Fischer*, 421 F.3d 83, 94 (2d Cir. 2005); *see also United States v. Perry*, 479 F.3d 885, 890-91 (D.C. Cir. 2007) (finding a district court's exclusion of the defendant's son to be a trivial closure insufficient to raise constitutional concerns).

Courts have continued to conduct triviality analyses in the wake of *Presley's* holding that the Sixth Amendment extends to *voir dire* proceedings. In *Barrows v. United States*, 15 A.3d 673, 680-81 (D.C. 2011), the Court of Appeals for the District of Columbia affirmed a conviction after concluding a "brief closure of the courtroom during *voir dire*" had not "seriously compromised the fairness or integrity of [the defendant's] trial." And in *Kelly v. State*, 6 A.3d 396 (Md. Ct. Spec. App. 2010), the Maryland Court of Special Appeals considered the following factors determinative in holding a closure to have been *de minimus*:

---

failed to discern a systemic flaw. *See Saldana*, 2010 U.S. Dist. LEXIS 75019, at *6-7, 30.

> (1) the limited duration of the closure, two to three hours during *voir dire*; (2) that the closure did not encompass the entire proceedings of *voir dire* and jury selection, and that a significant portion of the proceedings during that time were not even audible to spectators in the courtroom; and (3) that the closure was a partial one [that encompassed only members of the defendant's family], and not a total exclusion of all spectators."

*Id.* at 411.

Moreover, courts have placed considerable emphasis on the role of the trial judge in assessing whether a closure is of constitutional magnitude and have resisted ascribing to judges the unauthorized actions of courthouse personnel. The Tenth Circuit has held that a defendant may not mount a successful Sixth Amendment claim in the absence of "some affirmative act by the trial court meant to exclude persons from the courtroom." *United States v. Al-Smadi*, 15 F.3d 153, 154 (10th Cir. 1994); *see also id.* at 154-55 ("The brief and inadvertent closing of the courthouse and hence the courtroom, unnoticed by any of the trial participants, did not violate the Sixth Amendment."). The Fourth Circuit found a bailiff's temporary refusal to allow members of the public into the courtroom "entirely too trivial to amount to a constitutional deprivation" when it "existed for but a short time and was quickly changed by the Court, when advised of the action of the bailiff." *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir. 1975). By contrast, when a trial judge is initially unaware of a closure but subsequently ratifies actions taken by courthouse personnel to limit access to the courtroom, such "ex-post approval" is sufficient to trigger constitutional considerations. *United States v. Smith*, 426 F.3d 567, 572 (2d Cir. 2005).

Mere inadvertence does not invariably preclude the finding of a Sixth Amendment violation. *See Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007) ("[E]ven if the courtroom was closed because of inattention by the judge, courts have expressed concern in the past where a court officer's unauthorized closure of a courtroom impeded public access."). Nonetheless, courts of appeals have unfailingly examined whether the trial judge either initiated or ratified the closure in order to pinpoint to whom such inadvertence is attributable. For example, in *Owens*, a colloquy between the trial judge and a U.S. Marshal prior to jury selection revealed the judge's awareness that the courtroom would have to be cleared of spectators in order to ensure seating for the entire jury panel. 483 F.3d at 54. As prospective jurors were dismissed and seating became available, marshals continued to bar the defendant's family members from entering the courtroom. *Id.* There, the First Circuit found the trial judge's passive role in perpetuating the closure did not absolve the court from its direct responsibility for the public being banished from the courtroom "for an entire day while jury selection proceeded." 483 F.3d at 63.[8]

Here, the closure was limited in both duration and scope and was therefore unlikely to jeopardize the aims served by the public trial guarantee. *See, e.g.*, *Peterson*,

---

[8] *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004), to which Greene cites for the proposition that "[w]hether the closure was intentional or inadvertent is constitutionally irrelevant," is similarly distinguishable. In *Walton*, the Seventh Circuit held a defendant's right to a public trial had been transgressed by a trial judge's decision to allow the prosecution to present its entire case during two late-evening sessions that took place after the courthouse had been closed and locked for the night. *Id.* at 432.

85 F.3d at 43-44; *Braun*, 227 F.3d at 919-20; *Kelly*, 6 A.3d at 411. Unlike in *Owens*, the partial closure occurred unbeknownst to the trial judge. Unlike in *Presley*, in which the defendant immediately objected to the exclusion, *see* 130 S. Ct. at 722, Greene never raised an objection and was thus complicit in allowing the court's unawareness of the closure to persist. And, unlike in *Smith*, the closure was not subsequently ratified by any affirmative act of the court. Reasoning that *Presley* does not fundamentally alter the nature of the triviality inquiry, the District Court stated "the Supreme Court did not intend the holding of *Presley* to be extended to unilateral actions taken by court security staff about which the trial judge was completely unaware." *See also United States v. Agosto-Vega*, 617 F.3d 541, 547-48 (1st Cir. 2010) (analogizing to Presley and focusing on the central role played by the trial judge in each matter in causing members of the public to be excluded from the voir dire); *People v. Bui*, 107 Cal. Rptr. 3d 585, 594 (Cal. Ct. App. 2010) ("We do not believe that *Presley* obviates consideration of the 'de minimis' nature of a courtroom closure . . . ."). Therefore, the District Court properly concluded Greene did not suffer harm of constitutional dimension when a court security officer temporarily prevented his brother from entering the courtroom. Consequently, we will affirm the court's denial of Greene's motion for a new trial.

B.

Second, Greene contends the court abused its discretion in rejecting his request to instruct the jury that it could convict only if it found Greene was acting outside the scope

of his police duties while in possession of the guns.[9] In general, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Gov't of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1180 (3d Cir. 1995) (internal quotation marks omitted). "A court errs in refusing a requested instruction only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999). At bottom, we must determine "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (internal quotation marks omitted).

Here, the court properly instructed the jury on each the four essential elements the government was required to prove beyond a reasonable doubt in order to obtain a conviction under 18 U.S.C. §§ 922(k) and 924(a)(1)(B).[10] The court elaborated on its rationale for denying Greene's requested instruction at a sidebar conference immediately following the jury charge:

> There's no statutory defense in this case. I think you have eloquently and appropriately argued that if he had the weapon in the course of his police work, legitimately, that that would not constitute a crime. That was the point of the government's presentation, that he was outside the protocols. We spent hours and hours in testimony on that. And to give the instruction,

---

[9] We review a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Weatherly*, 525 F.3d 265, 269 (3d Cir. 2008).

[10] Under 18 U.S.C. § 922(k), it is unlawful "to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce."

11

I think, tips the balance unnecessarily and unfairly in favor of the defense, and potentially directs a verdict for the defense. . . . [U]nless there was a statutory defense I could possibly give in that regard, you were not estopped from making the argument that he had [the firearms] pursuant to proper police work.

Greene renewed his request prior to the jury being released for deliberations. Declining to rehash "each side's theory of the case," the court once more rejected the request.

We conclude the court did not abuse its discretion in denying Greene his proposed jury instruction. Notably, Greene does not contest the court's finding that no "recognized defense" exists as to which the jury should have been instructed. *See Isaac*, 50 F.3d at 1180. The court's language tracked the Third Circuit Model Jury Instructions, *see* Model Third Circuit Crim. Jury Instruction No. 6.18.922K, and Greene cites to no legal authority establishing possession within the lawful discharge of law enforcement duties as a viable defense to a charge under § 922(k). The court was not obligated to fashion an instruction with no basis in the law. *See Davis*, 183 F.3d at 250 (explaining a court abuses its discretion only if the proposed instruction is "correct"). Consequently, because the instruction "fairly and adequately submit[ted] the issues in the case to the jury," *see Zehrbach*, 47 F.3d at 1264, we will deny Greene's request to vacate his conviction on this ground.

## C.

Next, Greene argues the District Court abused its discretion in excluding

12

testimony about his relationship with de Lugo.[11] At trial, Greene testified he had placed the weapons in his backpack intending to surrender them to de Lugo for processing. When Greene's trial counsel inquired as to whether Greene "had occasion to turn over items to Corporal de Lugo in the past," Greene answered in the affirmative, prompting the government to object. During a sidebar conference, the court instructed Greene's counsel to proffer the substance of the contemplated testimony as it pertained to Greene's previous encounters with de Lugo. Concluding Greene had failed to establish an adequate evidentiary foundation to demonstrate the testimony's relevance, the court sustained the objection.

To prevail on appeal, Greene must demonstrate the district court's evidentiary ruling was "arbitrary, fanciful or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (internal quotation marks omitted). Quite conspicuously, Greene offers no legal support for his assertion that this specific evidentiary ruling constituted an abuse of the court's discretion under these governing standards. Greene maintains the exclusion of this testimony irreparably prejudiced his defense by preventing him from describing the "informal process" that purportedly permitted him to possess the guns without proper paperwork provided he turn them over to de Lugo within some unspecified timeframe. However, the court did not preclude him

---

[11] We review a district court's decision "to admit or exclude evidence, if premised on a permissible view of the law, . . . for an abuse of discretion." *United States v. Sokolow*, 91 F.3d 396, 402 (3d Cir. 1996).

from attempting to lay an appropriate foundation for this line of testimony nor from introducing evidence of alternative departmental procedures for handling firearms.

We need only consider whether "no reasonable person would adopt the district court's view." *Id.* (internal quotation marks omitted). Employing this deferential standard of review, we conclude the court acted within its discretion in sustaining the government's objection. Thus, we will deny Greene's request to vacate his convictions on this evidentiary basis.

### D.

Lastly, Greene contends the court conducted his sentencing hearing in a procedurally defective manner. *See United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008) (explaining that our responsibility on appellate review is "to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way").[12] Specifically, in the course of evaluating the sentencing factors outlined in 18 U.S.C. § 3553(a), the court, on multiple occasions, referred to Greene as a "dirty" and "corrupt" officer. Greene contends the court's adjectival flourishes indicate his sentence was not imposed in accordance with the factors set forth in the sentencing guidelines. We disagree.

---

[12] We review sentences for both procedural and substantive reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). As the party challenging the sentence, Greene bears the burden of demonstrating unreasonableness. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

14

Greene chiefly relies on *United States v. Figueroa*, 622 F.3d 739, 743 (7th Cir. 2010), in which the Seventh Circuit vacated a sentence that fell squarely within the recommended guideline range after finding the district court's "extended discussion of topics that [were] both outside of the record and extraneous to any proper sentencing consideration" had tainted the procedural aspects of the defendant's sentencing. There, the sentencing court "digressed to discuss Figueroa's native Mexico, the immigration status of Figueroa and his sisters, and the conditions and laws in half a dozen other countries—not to mention unnecessary references to Hugo Chavez, Iranian terrorists, and Adolf Hitler's dog." *Id.* at 741. Unable to determine whether this gratuitous "litany of inflammatory remarks" prejudiced the defendant, the appellate court remanded for resentencing. *Id.* at 744-45.

Here, the District Court's remarks were neither incendiary nor tangential. Read in context, the remarks were germane to the court's application of the second sentencing factor, namely the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] [and] to afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2). The court cited "endemic police corruption" as a societal scourge and lamented that "[i]f those who are sworn to protect citizens fail to obey the law themselves, we have enormous trouble." Rather than serving as "an exemplar of good behavior," Greene instead had been, in the estimation of the District Judge, "a dirty cop" whose actions had undermined popular confidence in law enforcement. Concluding it was necessary to

impose a term of imprisonment in order to avoid "depreciat[ing] the gravity of this offense," the court expressly crafted its sentence with an eye on deterring similar conduct. The court's comments were not prejudicial and did not deprive Greene of a procedurally fair sentencing.

Having determined the court sentenced Greene in a procedurally sound fashion, we review the substantive reasonableness of Greene's sentence for an abuse of discretion and must affirm so long as the sentence "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). The sentencing guidelines prescribed an imprisonment range of 27 to 33 months; the court sentenced Greene to 30 months. In so doing, the court rejected the government's recommendation that Greene be sentenced to the statutory maximum of five years imprisonment on each count to be served consecutively. According the trial court the measure of deference to which it is entitled, we are satisfied the sentence reflected a reasonable application of the § 3553(a) factors. *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) ("[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.").

Therefore, we will deny Greene's request to vacate and remand for resentencing.

## III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.