In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1789

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SEAN D. PATRICK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11-CR-238—**Rudolph T. Randa**, *Judge.*

ARGUED OCTOBER 24, 2012—DECIDED FEBRUARY 14, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* For several years, Sean Patrick made his living as a pimp, trafficking both minors and adult women. His career came to an abrupt halt in May 2010 when he was arrested in connection with the shooting death of another Milwaukee pimp. Federal sex trafficking charges under 18 U.S.C. §§ 371 and 1591 followed; Patrick pleaded guilty to four counts; and the district court sentenced him to 360 months in prison. The court made that sentence consecutive to a 20-year

state court sentence that Patrick was serving. Patrick's appeal is limited to his sentence. In brief, he argues that the district court committed procedural error by failing to discuss his cooperation with the authorities and by seemingly basing the sentence on extraneous factors. Because we agree with him that the court did not, so far as the written record reflects, give adequate consideration to his cooperation, we vacate the sentence and remand for further proceedings. We have no need to, and do not, rest this decision on Patrick's alternative argument.

## I

In 2010 Patrick was arrested for the murder of a fellow Milwaukee pimp. He pleaded guilty in state court to reckless homicide and was sentenced to 20 years' imprisonment. In his state homicide proceeding, Patrick provided information about an unresolved kidnapping and testified against another defendant charged with prostitution-related crimes. The state's attorney wrote a letter affirming that Patrick "provid[ed] detailed and credible testimony at the trial." Patrick's cooperation was "meaningful and significant," the letter said, because his testimony "was probative and most probably relied upon by the jury."

After Patrick pleaded guilty to the state homicide charges, federal prosecutors indicted him on the charges that form the basis of the present case: conspiracy to traffic minor and adult women for the purpose of prostitution. Patrick again cooperated, this time in

the U.S. government's prosecution against him. In addition, he accepted responsibility for the crimes and acknowledged that what he had done was morally and legally wrong. Patrick described himself as essentially "two people": Before he was arrested for the homicide in May 2010, he was a "confused individual who thought material things and money would buy happiness"; now, he stated, he wants to set an example of "what happens when you don't go to school and you get caught up in thinking money is everything."

The probation department calculated an advisory range under the U.S. Sentencing Guidelines of 360 months to life imprisonment for Patrick's four sex trafficking offenses. Noting the letter from the state's attorney and Patrick's provision of "enlightening" information about the prostitution business, the government moved the court to impose a lesser sentence of 300 months' imprisonment and to provide that this sentence would run concurrently with Patrick's state sentence.

At Patrick's sentencing hearing, the judge discussed Patrick's criminal history at length. He expressed his concern that crime causes poverty and described the decline of his own childhood neighborhood. He then commented that it was hard to find "positives" about Patrick and rejected defense counsel's suggestion that Patrick cared about his 12 children, adding this unfortunate remark: "Twelve kids by 10 different women. I mean, my God, how can you even satisfy 10 different women? I can't even satisfy my wife." He also chastised Patrick for failing to fulfill his patriotic duty. When re-

minded of the government's motion for a reduced sentence based on Patrick's cooperation, the judge stated that he would grant the motion by imposing a 360-month sentence rather than a life sentence, but that this sentence would run consecutively to Patrick's 20-year state sentence. The government reminded the judge that it had in fact recommended that the federal sentence run concurrently with the state sentence. The judge responded, "I know what the recommendation of the Government was. But it's clear that the Court does not have to accept the recommendation of the Government." At no point in the record did the judge explain why he had chosen not to follow the government's recommendation or why, apparently, he gave such little weight to Patrick's cooperation.

## II

We review a district court's sentencing determination both for procedural soundness and for substantive reasonableness. This case raises only the former point, which turns here on two issues: whether Patrick's sentence ultimately was based on the considerations identified in 18 U.S.C. § 3553(a) as relevant to the length of a sentence, and whether the court gave an explanation for its chosen sentence adequate for appellate review. *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38 (2007); *Rita v. United States*, 551 U.S. 338 (2007)). If the sentencing proceeding satisfies these procedural requirements, we afford a presumption of reasonableness to a sentence

within a properly calculated recommended guidelines range. *Id*.; *United States v. Figueroa*, 622 F.3d 739, 744 (7th Cir. 2010).

Section 3553(a) requires a sentence to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training." Even though a district court does not need to provide an exhaustive explanation of its reasons for choosing a particular sentence within the recommended guideline range, the court must nevertheless say enough to allow a reviewing court to assure itself that the sentence complies with Section 3553(a). *Rita*, 551 U.S. at 356 ("The sentencing judge should set forth enough to statisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *Figueroa*, 622 F.3d at 744.

In practice, this means that the district court must give meaningful consideration to the characteristics of the defendant that might bear on the appropriate length of a sentence and explain how those characteristics influenced the sentence the court chose. *Rita*, 551 U.S. at 357 ("Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments."); *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007);

*United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). A sentencing court is not obliged to engage in a lengthy discussion of every argument for leniency that the defendant raises. If a defendant's argument for a reduced sentence is clearly without merit—"[i]f anyone acquainted with the facts would have known without being told why the judge had not accepted the argument"—then the judge need not specifically address that point. *Cunningham*, 429 F.3d at 679. On the other hand, if a "defendant's principal argument . . . was not so weak as not to merit discussion," the court must explain how it took that argument into account or why it chose to reject the defendant's position. *Id.* Otherwise we have no way of performing our assigned task of appellate review—a task that requires us to ensure that the district court adequately considered the Section 3553(a) factors. *Id.*

In *Miranda*, we ordered resentencing because the court failed to address the defendant's argument for lenience based on mental illness. 505 F.3d at 792. Even though it alluded to Miranda's mental illness, the court did not explain how it bore upon the Section 3553(a) factors. What was missing in the record was information about the court's views on whether the defendant's mental illness altered the amount of punishment necessary for deterrence, made him less deserving of punishment, or rendered imprisonment inappropriate. *Id.* at 792-93. Likewise in *Cunningham*, we determined that the court erred by failing to discuss the defendant's argument for a more lenient sentence because of his psychiatric problems and substance abuse.

*Cunningham*, 429 F.3d at 678-79. We explained that we could not have "confidence in the judge's considered attention to the [Section 3553(a)] factors" when the judge failed to grapple with a mitigating argument based on "a ground of recognized legal merit." *Id.* at 679. In a similar vein, in *Figueroa* we required resentencing because the court's discussion of "Figueroa's native Mexico, the immigration status of Figueroa and his sisters, and the conditions and laws in half a dozen other countries" made it impossible to determine whether the sentence was properly based on the considerations outlined in section 3553(a) or improperly based on extraneous materials. *Figueroa,* 622 F.3d at 741, 743.

In the present case, Patrick argues not only that similar irrelevancies accounted for his sentence, but also that the court failed to consider his most significant argument for leniency—his cooperation with the authorities. Although the government stressed Patrick's violent career as a pimp at the sentencing hearing, the Assistant U.S. Attorney also made the following comment:

> Because of [Patrick's] cooperation in the State—and you have the letter. And because of that cooperation, we are moving downward from the guidelines a bit. I'm asking the Court to impose a sentence of 300 months. That is 25 years. No fine. He should be ordered to pay his child support. I would note that his child support obligation—he has 12 children—is more than $146,000 outstanding. So no fine. Of

course the special assessment is mandatory. And I believe that five years of supervised release would be appropriate.

The AUSA then added that he was asking for a sentence concurrent to the state sentence, not consecutive. He also elaborated a bit on the assistance that Patrick had provided, commenting that "it was quite enlightening for those of us who had the opportunity to sit with him." The district court thus had before it a solid basis for finding that Patrick's cooperation had indeed been meaningful and that it might warrant some kind of discount on his sentence.

As we have already stated, however, the court passed by this point with only the conclusory remark "I was going to sentence you to life in prison, Mr. Patrick, because you have ruined the lives, for the rest of their lives, of a lot of people that you came into contact with . . . . But because of your cooperation I'm going to sentence you to 360 months." This statement sheds little if any light on the judge's thinking. We can assume that the judge was interested in assuring that there would be sufficient marginal deterrence for Patrick's additional crimes, but even if he thought that a sentence of 300 months concurrent to the state sentence was not enough, we have no idea why he believed that a de facto life sentence was the only alternative. Like the arguments for lenience based on mental illness in *Miranda* and *Cunningham*, Patrick's argument based on his cooperation is "a ground of recognized legal merit" for a reduced sentence. And this surely was not a frivolous

argument, given the fact that Patrick was urging precisely the sentence that the government has recommended.

Most worrisome is our inability to discern whether the court appreciated the severity of the sentence it imposed, and in particular its equivalence to the life sentence that it had purportedly rejected. Perhaps a 360-month sentence concurrent to Patrick's 20-year state sentence would not have been problematic, but a 360-month consecutive sentence in Patrick's case *is* effectively a life sentence. Patrick's sentence runs until he is 86, and the average life expectancy for a male of Patrick's age and race is approximately 72 years. (According to the Center for Disease Control, a 38-year-old black male is expected to live another 34.6 years, or to the age of 72.6. National Vital Statistics Report, Vol. 54, No. 14 (April 19, 2006) at 22, http://www.cdc.gov/nchs/data/nvsr/nvsr54/nvsr54_14.pdf.) Because "a sentence of death in prison is notably harsher than a sentence that stops even a short period before," we have stated that "death in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence should certainly give pause to a sentencing court." *United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006).

Had the court looked more carefully at both its proposed sentence and the credit that it thought Patrick's cooperation warranted, it likely would have recognized the severity of the de facto life sentence that it was contemplating and either would have rejected that for something more moderate or would have ex-

plained why it believed that a sentence so much harsher than the concurrent sentence the government had recommended was nonetheless reasonable.

## III

We therefore remand for resentencing. We make no prediction on the question whether this will change the result for Patrick. He was, as the government reminds us in its brief, a man who recruited disadvantaged minor girls for prostitution, who subjected them to beatings and other abuse to control them, and who killed a rival pimp by shooting him with a semi-automatic handgun. Patrick is serving time now for that crime. On the other hand, both the state authorities and the AUSA vouched for his cooperation after his arrest. It is up to the district court to decide how to weigh these competing factors, focusing solely on the materials properly in the sentencing record. The case is therefore REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 shall apply on remand.