ROVNER, Circuit Judge,
dissenting.
Despite a recommendation from the government for a sentence at the low end of the applicable 151-188-month guidelines range and a request from the defendant for a below-guidelines sentence of 100 months, the district court sentenced Frank Castaldi to 276 months — the maximum possible under statute and forty-six percent above the high end of the advisory guidelines range. The majority acknowledges that Castaldi’s sentence would be much easier to affirm had the judge specifically addressed his arguments on disclosure and cooperation, supra at 596, but characterizes the judge’s thinking on this point as “so obvious” that we need not remand for him to make the point explicitly in a second hearing, id. I do not think it at all obvious, from a legal standpoint, why the longest possible sentence allowed by statute is reasonable for a defendant who turned himself in and cooperated extensively with the government, particularly when the total offense level had already been adjusted upward by thirty levels to account for the loss, the number of victims, and his abuse of a position of trust.[1]
It goes without saying that when a sentencing court makes such a dramatic de *601 parture from the advisory guidelines range, it must provide a particularly compelling justification for its sentence. Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (“We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.”); see also United States v. Miller, 601 F.3d 734, 739 (7th Cir.2010). Such justification may have been present here. As the majority ably recounts, Castaldi committed a horrific abuse of trust against his victims, many of whom were Italian-American immigrants who lost everything for which they had worked so hard. I too have read the transcript and am shocked and appalled at the utter ruin he wrought on honest, hardworking friends and family. It is apparent from the sentencing transcript that the court was outraged at the trail of devastation Castaldi left in his wake. But I cannot agree with the majority that because the judge made clear his thinking on the magnitude of harm caused by the crime that he necessarily provided enough information for us to be able to tell that he meaningfully considered Castaldi’s mitigating arguments.
United States v. Cunningham, 429 F.3d 673, 679 (7th Cir.2005), and its progeny make clear that if a defendant has a well-supported argument in mitigation, we must be able to tell from the record why the district court either rejected the argument or deemed it unpersuasive in light of other relevant factors, id. at 679 (“A judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight.”); see also United States v. Patrick, 707 F.3d 815, 819-20 (7th Cir. 2013) (remanding where it was unclear from the record whether district court adequately considered defendant’s cooperation); United States v. Miranda, 505 F.3d 785, 793-94 (7th Cir.2007) (remanding based on district court’s failure to adequately address defendant’s contention that mental illness warranted reduced sentence under § 3553(a) factors). Of course I am well aware that a sentencing court need neither address every mitigating argument raised by the defendant, e.g., United States v. Vizcarra, 668 F.3d 516, 527 (7th Cir.2012) (noting that we routinely uphold sentences where the district court does not explicitly discuss all of defendant’s mitigating arguments), nor “belabor the obvious,” United States v. Gary, 613 F.3d 706, 709 (7th Cir.2010). But I also believe that Castaldi’s decision to turn himself in to authorities — instead of any number of other decisions, including fleeing (after all, no one was looking for him) — was atypical enough so as to deserve some discussion from the district court.
Over the course of the entire sentencing hearing, the district court twice made specific mention of Castaldi’s confession and cooperation. The first was at the start of the hearing when detailing Cas-taldi’s arguments. Noting that both the government and Castaldi’s memo' focused on his “extraordinary cooperation,” the court inquired whether Castaldi had legal counsel when he turned himself in (he did). Tr. 6-7. Later, when imposing Castaldi’s sentence, the district court never directly discussed Castaldi’s cooperation or the fact that he had reported his own fraud to police. The court simply stated generally that it had taken into consideration all the mitigating factors outlined by Castaldi in his memorandum. Despite Cunningham’s admonition that a “rote statement that the judge considered all relevant factors will not always suffice,” 429 F.3d at 679, the majority deems just such a statement adequate here, supra at 596. Specifically, the majority considers the court’s statement to be a *602 “shorthand reference to longer discussions earlier in the hearing” that demonstrate the judge’s close attention to the specifics of the case, supra at 596. But there were no such longer discussions on the topic of Castaldi’s cooperation, despite efforts of both parties to direct the court to Castal-di’s noteworthy cooperation. Following up on defense counsel’s discussion of Cas-taldi’s cooperation, the government stated:
Your honor, to follow up on what Mr. Monico said, the situation was unusual. Obviously these are times of significant financial frauds amidst the media reports that frequently — Mr. Castaldi did come in in December of 2008. The government was not aware of, or investigating, or, as far as I know, hadn’t received complaints about his investment scheme, his ponzi scheme at that time. And he came in and he gave up a $77 million ponzi scheme. He brought in all the records, he gave consent to search his businesses, he provided sworn testimony and other statements without any legal protections. And then he met with the government. He met with the government to unwind this largely cash business, largely cash payments, cash receipts, that were undocumented other than through notes. And so, Mr. Cas-taldi in mitigation, which lends to the government’s recommendation of the 151-month sentence — Mr. Castaldi did self-report and did give this up.
Tr. 81.
Instead of responding to or acknowledging Castaldi’s and the government’s arguments, the sentencing judge focused instead on an alleged $18 million in unaccounted-for losses. Although recognizing that the $18 million was technically unaccounted-for, government counsel attempted to explain to the court that over the 22-year period Castaldi was “running a myriad of businesses as well as businesses that were losing a significant amount of money.” Tr. 83. The government then reiterated its recommendation of a sentence at the low end of the guidelines range, but the district court remained focused on the $18 million, going so far as to hypothesize that if Castaldi received a sentence at the low end of the guidelines, “an $18 million return for spending twelve years in jail may be attractive.” Tr. 85. This discussion is puzzling, since, unlike the mitigating. arguments the parties sought to point out, the issue of the $18 million was not raised by the parties. Cf United States v. Miller, 601 F.3d 734, 739-40 (7th Cir.2010) (remanding for resentencing based in part on court’s discussion of recidivism of sex offenders despite lack of record evidence on the subject).
Castaldi’s case has much in common with United States v. Patrick, 707 F.3d 815 (7th Cir.2013), where we remanded for resentencing after concluding that the district court failed to give adequate consideration to the defendant’s cooperation with authorities. Defendant Sean Patrick, a pimp who trafficked both minor and adult women, pled guilty in state court to reckless homicide for the death of a fellow pimp. Id. at 817. He was then charged and convicted in federal court of conspiracy to traffic minor and adult women for the purpose of prostitution. Id. Although Patrick’s advisory guidelines range was 360 months to life imprisonment, the government recommended a 300-month sentence in light of Patrick’s cooperation; it also requested that Patrick’s sentence run concurrently to his twenty-year state sentence. Id. at 817-18. The court rejected the government’s suggestion but stated that based on Patrick’s cooperation it would impose a 360-month sentence (running consecutively to the twenty-year state sentence) instead of life, despite the fact that Patrick’s lengthy criminal history *603 made it hard to find “positives” about him. Id. We remanded for resentencing after noting that it was unclear from'the record why the district court believed Patrick’s cooperation did not warrant a less severe sentence and relatedly, whether the court appreciated the severity of what may have amounted to an effective life sentence. Id. at 819-20.
Like the defendant in Patrick, Castaldi and his nearly life-long fraud of the worst sort hardly makes him a candidate for leniency.[2] But the sympathetic nature of his victims does not relieve the district court of its obligation to explain why Cas-taldi’s extensive cooperation counts for nothing. In yet another similarity to Patrick, it is impossible to tell from the record whether the court appreciated that by imposing a 276-month sentence it may have been effectively sentencing Castaldi to life imprisonment for his fraud. See Patrick, 707 F.3d at 820 (“Most worrisome is our inability to discern whether the court appreciated the severity of the sentence it imposed, and in particular its equivalence to the life sentence that it purportedly rejected.”). Castaldi was 57 at the time of sentencing. According to the Social Security Actuarial Life Tables, the average life expectancy for a male Castaldi’s age is precisely the length of his sentence — twenty-three years. - See Social Security Administration, Actuarial Life Table: Period Life Table, 2009, available at http://www. ssa.gov/OACT/STATS/table4c6.html. Thus, the district court’s sentence may amount to life imprisonment for a male of average health. But as outlined in Castaldi’s sentencing memorandum, he suffers from stage one primary biliary cirrhosis and several other health problems that make it all the more unlikely that he will outlive his sentence. Cf. United States v. Wurzinger, 467 F.3d 649, 652 (7th Cir.2006) (“There is a worthy tradition that death in prison is not to be ordered lightly, and the probability that a convict will not outlive his sentence should certainly give pause to a sentencing court.”). When imposing the equivalent of a life sentence on an individual who turned himself in — whether or not that decision was only motivated by fear of discovery — I believe the district court must do more than make its thinking “clear enough,” supra at 595-96, as to why it is rejecting mitigating arguments urged by both the government and the defendant.
Thus, although the majority may be correct that the judge was “well aware” of Castaldi’s disclosure and cooperation, supra at 595-96, being aware of an argument seems a far cry from meaningfully considering it. It is this latter element that is lacking here. The majority concludes that this case presents the exception to the general rule on legally supported mitigation arguments because “anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.” Id. But that statement from Cunningham refers to arguments “so weak as not to merit discussion” which is hardly the case with Castal-di’s self-surrender and cooperation. See also Patrick, 707 F.3d at 818-19 (“If a defendant’s argument for a reduced sentence is clearly without merit — ‘[i]f anyone acquainted with the facts would have known without being told why the judge had not accepted the argument’ — then the judge need not specifically address that point.” (quoting Cunningham, 429 F.3d at, 679)). It is undisputed that Castaldi’s request for a reduced sentence was supported by the record and based on “ ‘a *604 ground of recognized legal merit.’ ” See Patrick, 707 F.3d at 820 (quoting Cunningham, 429 F.3d at 679). Cf. U.S.S.G. § 5K2.16 (allowing what was formerly-known as a “downward departure” when a defendant motivated by remorse “discloses an offense that otherwise would have remained undiscovered”).
If we affirm consecutive sentences at the statutory maximum (and far above the guidelines range) when the court does not carefully explain why a legitimate mitigating argument is unpersuasive, I believe we risk sanctioning district courts in the tempting practice of simply making a blanket statement that mitigation arguments have been considered. See Cunningham, 429 F.3d at 679 (noting the “temptation to a busy judge to impose the guidelines sentence and be done with it, without wading into the vague and prolix statutory factors”). It is well-established that if a mitigating argument may be meritorious, the court needs to simply state explicitly why it is unpersuasive. It is not an onerous burden, and we should not have to read between the lines to understand the court’s thinking, particularly when the court intends to impose the maximum penalty possible on a defendant. Cf. United States v. Padilla, 520 F.3d 766, 775 (7th Cir.2008). Castaldi’s fraud was atrocious, of that there is no question; however, his is an unusual case because of the sentencing court’s significant deviation from the advisory guidelines range and the atypical nature of Castaldi’s extensive cooperation. Given those considerations, I cannot agree with the majority that the district court’s thorough discussion of certain § 3553(a) factors can stand proxy for its obligation to make explicit why Castaldi deserves the highest possible sentence for his crimes despite his self-surrender and cooperation. In short, I cannot join the majority in affirming in the face of the district court’s failure to more explicitly acknowledge what was essentially a joint request for leniency. For that reason, I would remand for resentencing so that we could assure ourselves that the district court adequately considered Castaldi’s mitigating arguments and recognized the gravity of the de facto life sentence it imposed.

. Castaldi's adjusted offense level of 34 included a 22-level increase under U.S.S.G. § 2Bl.l(b)(l)(L) for a loss exceeding $20 million, a 6-level increase under § 2B 1.1 (b)(2)(C) because the offense involved more than 250 victims, and a 2-level increase under § 3B1.3 because Castaldi abused a position of trust.

. Patrick is described as "a man who recruited disadvantaged minor girls for prostitution, who subjected them to beatings and other abuse to control them, and who killed a rival pimp by shooting him with a semi-automatic handgun.” Patrick, 707 F.3d at 820.