NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 9, 2010
Decided July 6, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-3823

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Eastern District |
| | of Wisconsin. |
| *v.* | |
| | No. 08-CR-91 |
| DAVID WILSON, | |
| *Defendant-Appellant*. | Rudolph T. Randa, *Judge*. |

**O R D E R**

David Wilson pleaded guilty to conspiring to distribute cocaine. See 21 U.S.C. §§ 846, 841(a)(1). At sentencing Wilson conceded that he was a career offender, and the district court calculated his advisory guidelines range as 262 to 327 months. Because of his substantial assistance, the government asked the court to sentence Wilson to 215 months, 15% below the low end of this range. The district court decided to be more generous and sentenced Wilson to

200 months, but Wilson argues here that reversible error occurred nonetheless. In his view, the sentence must be set aside both because the court strayed too far beyond the record during the hearing and because it failed to give sufficient consideration to his bid for an even lower sentence. While we are troubled by some of the remarks that the court made, we are convinced by the record as a whole that they did not affect the sentence, and we therefore affirm.

From at least 2005 through 2008, Wilson conspired with several others, including members of a local Vice Lords affiliate, to distribute crack, powder cocaine, and marijuana in Milwaukee, Wisconsin. After a warrant was issued for his arrest, Wilson turned himself in and began cooperating with investigators. Later, Wilson pleaded guilty and stipulated that the provable drug quantity equaled at least 50 grams of crack or 5 kilograms of powder cocaine, either of which was enough to trigger a statutory penalty of 10 years to life. See 21 U.S.C. § 841(b)(1)(A)(ii), (A)(iii). Wilson had been convicted twice before for felony drug offenses, but the government did not file an enhancement information that would have made a life sentence mandatory. See 21 U.S.C. §§ 841(b)(1)(A), 851. Nonetheless, his prior drug convictions qualified him as a career offender, see U.S.S.G. § 4B1.1. After receiving credit for acceptance of responsibility, see *id.* § 3E1.1, Wilson had a final advisory guidelines range of 262 to 327 months.

At sentencing the government proposed a reduction to 215 months to reward Wilson's substantial assistance. Wilson thought that a steeper discount was appropriate and urged the district court to go all the way down to the 120-month statutory minimum. Relying on *United States v. Knox*, 573 F.3d 441 (7th Cir. 2009), Wilson argued that a nonguidelines sentence was appropriate in any event because Congress had not directed the Sentencing Commission to include § 846 conspiracies within the class of crimes encompassed by the career-offender guideline, as it had done for other drug offenses. Wilson also highlighted several aspects of his character and criminal history that he contended warranted a prison term significantly below the guidelines range. For example, Wilson pointed out that the convictions that triggered his career-offender designation involved small amounts of drugs (2.4 grams of crack and 94 grams of powder) and occurred seven and 14 years before the start of the conspiracy in this case. He asserted that he posed a lower risk of recidivism because he was already 41 years old, and studies show that recidivism rates decline with the increasing age of the offender. Wilson added several other points: his IQ of 78 places him in the borderline mentally retarded range; he has suffered from drug addiction for most of his adolescent and adult life; and he experienced a tumultuous childhood, including the death of his father, when he was young.

The district court settled on a term of 200 months. It gave a "modest" amount of weight to Wilson's argument that he should get less time because of the age of the prior convictions

that triggered his career-offender status. But that was all. The court noted that Wilson had been convicted in state court of robbing a bank, had been put on probation, and had quickly acquired another conviction for burglary. Indeed, the court observed, Wilson had never successfully completed a term of probation or parole, and while on supervision he had committed other crimes that resulted in revocations but no further prosecution. His criminal history included 35 traffic violations. The district court rejected the notion that Wilson's borderline IQ warranted a shorter prison term and noted that a low IQ had not prevented him from driving, fathering children, working on his high school equivalency diploma, or presenting himself well in court. In his previous interactions with the criminal justice system, the district court continued, Wilson's low IQ apparently encouraged leniency from sentencing judges. Rather than take advantage of this indulgence, however, Wilson had rejected opportunities to work and continued to flout the law. As we discuss in more detail below, the district judge also spent some time discoursing on the local, national, and international implications of the drug trade, including how the once-stable Milwaukee neighborhood where the judge himself grew up was now at the center of the drug trafficking in this case.

On appeal, Wilson contends that the district court's sentencing decision was procedurally and substantively unreasonable. He concedes that his guidelines range was properly calculated, but he argues that the district court erred by treating the range as presumptively reasonable and by ignoring his argument that a career offender convicted only of conspiracy need not be sentenced at or near the statutory maximum. He also urges that the district court procedurally erred by failing to apply the sentencing factors listed in 18 U.S.C. § 3553(a). Finally, he asks us to find that his 200-month sentence is substantively unreasonable.

We begin our review of a sentence by ensuring that the sentencing judge committed no serious procedural error "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); see *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 1538 (2009). In its consideration of the statutory factors, a district court may not pass over in silence arguments that "are not so weak as to not merit discussion." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). The court need not, however, dwell on a routine argument that is not developed. See *United States v. Pulley*, 601 F.3d 660, 667 (7th Cir. 2010); *United States v. Young*, 590 F.3d 467, 474 (7th Cir. 2009).

The district court's consideration of the statutory sentencing factors touched all the important points. The court acknowledged Wilson's personal characteristics, see 18 U.S.C.

§ 3553(a)(1), recognizing his borderline mental retardation. It was simply not persuaded that his low IQ was a reason for less incarceration. The court noted that the "system" had "done its duty" by demonstrating leniency in the past, but Wilson had responded by committing more crimes instead of seizing the chance to turn his life around. As the court put it, "You can't expect the citizens to do much more when someone doesn't do it themselves.  And everybody is responsible for their own behavior regardless if they're a 78 IQ." The court summed up Wilson's argument somewhat insensitively: "[G]ive him a break, Judge, because he's not hitting on all cylinders."

The district court also addressed the nature and circumstances of the offense, along with the need to protect the public from further crimes. See 18 U.S.C. § 3553(a)(1), (2). It was particularly concerned with the way that Wilson's crimes and others like them had affected the community. Indeed, its commentary on the state, national, and international drug trade spans several pages in the sentencing transcript. The court noted that President Obama has visited only one country twice, and that country is Mexico; it speculated that the reason for this attention is the fact that 80 percent of the cocaine that enters the United States comes through Mexico. The court bemoaned the chaos in El Paso, Texas; it mentioned Colombia and its problems with the revolutionary FARC group; and, returning to the topic of Mexico, it expressed the opinion that Mexico is in danger of becoming a "narco-state." In addition to these more global thoughts, the court personalized Wilson's crime. After observing that drug trafficking ravages communities and inspires other crimes as addicts seek money for drugs, the court commented on the location of Wilson's criminal activity: "This area is particularly poignant to the Court because that's the neighborhood I grew up in." The court then tied together its concerns by pointing out that drug trafficking has an impact far outside any particular neighborhood: "And every time you deal drugs on First and Keefe or 43rd and Fiebrantz or 12th and National . . . that has created an atmosphere in Juarez, Mexico, for instance, right across the border from El Paso."

This digression is troublesome in at least two ways: first, because it ranges so far from any evidence that was properly in the sentencing record, and second, for the way in which it can be understood as a personal grudge that the judge bore against Wilson for dealing drugs in his old neighborhood. But it would be a mistake to take that one passage in isolation. Taken as a whole, the sentencing transcript demonstrates that the court based its sentence on considerations authorized by the law, including the nature of Wilson's previous criminal activity and the need for the sentence to promote respect for the law. See 18 U.S.C. § 3553(a)(2)(A). Apart from Wilson's drug trafficking convictions, his criminal history includes convictions for bank robbery, burglary, drug possession, theft, and 35 traffic violations. When reviewing this criminal history, the court agreed with Wilson that he deserved a modest break

because the convictions that triggering his career-offender designation were old: "[G]iven your employment record and given the fact that there are arrests in between with possession of controlled substance and no prosecution, it indicates to the Court that this type of activity was still going on."

At the time he filed his brief, Wilson's best argument was that the court erred by not addressing his argument based on *Knox*. Wilson conceded at sentencing that he was a career offender, and he does not challenge that designation here. His argument is that even though Congress directed the Sentencing Commission to write the guidelines so that certain drug crimes would yield an imprisonment range at or near the statutory maximum, see 28 U.S.C. § 994(h), conspiracy under § 846 was not among the offenses that the Commission had no choice but to include in the career-offender guideline. It does not help him now, however, for several reasons. First, *Knox* arose from the different treatment of crack and powder cocaine in the guidelines, but that distinction was never relevant to Wilson because he conceded that the government could prove his involvement in amounts of either crack or powder that independently would trigger the possibility of a life sentence. Second, the precise holding of *Knox* is no longer significant in this circuit. In *Knox* this court recognized that because Congress did not require the Sentencing Commission to write guidelines advising a sentence at or near the statutory maximum for drug conspiracy offenses, a district court may disagree on policy grounds with the career offender guideline for that class of defendants, 573 F.3d at 449-50, even though we thought that was not the case for the underlying drug crimes, see *United States v. Welton*, 583 F.3d 494, 499 (7th Cir. 2009), *vacated*, 130 S.Ct. 2061 (2010).

Earlier this year, however, we overruled *Welton* and adopted the unanimous view of other circuits that *all* sentencing guidelines can be rejected on policy grounds, even those like § 4B1.1 that are driven by congressional action. *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (*en banc*). That Congress required the Sentencing Commission to craft a guidelines for certain career offenders does not make the resulting guideline mandatory: "Because § 4B1.1 is just a Guideline, judges are as free to disagree with it as they are with § 2D1.1(c) (which sets the crack/powder ratio). No judge is required to sentence at variance with a Guideline, but every judge is at liberty to do so." *Id.* at 416.

Although the district court did not explicitly refer to Wilson's argument based on *Knox*, nothing in the record supports the idea that the district court believed the guideline range was mandatory. In fact, the very opinion that Wilson accuses the judge of ignoring was obviously known to the judge because Wilson brought the case to the court's attention. Moreover, the district court's willingness to sentence Wilson below the guidelines range provides conclusive evidence that the court recognized it possessed the discretion to sentence outside the career-

offender range.

Wilson's argument that his sentence is substantively unreasonable fares no better. A sentence within a properly calculated guidelines range is presumed reasonable, *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), and thus a below-guidelines sentence is also presumed reasonable, *United States v. Jackson*, 598 F.3d 340, 345 (7th Cir. 2010); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008). Although Wilson continues to urge that even 200 months is unreasonable, his only support for this contention comes from cases where this court upheld a below-range sentence over a challenge from the government. That a significantly below-range sentence might be reasonable in a particular case does not compel the conclusion that a higher sentence in a different case—or even the same case—would be unreasonable. Reasonableness of a sentence contemplates a range, not a point, *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009), and Wilson presents no evidence that his imprisonment term was outside the permissible range of choices.

After reviewing the record as a whole, we find no reversible error in the district court's sentencing decision. We therefore AFFIRM its judgment.