NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2010
Decided November 8, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1623

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 2:08-cr-00053-RTR-36 |
| TROY SMITH, *Defendant-Appellant*. | Rudolph T. Randa, *Judge*. |

**O R D E R**

Troy Smith pleaded guilty to conspiring to distribute cocaine. *See* 21 U.S.C. §§ 846 and 841(a)(1). The district court found that Smith was a career offender, *see* U.S.S.G. § 4B1.1, and refused to award Smith a downward adjustment for acceptance of responsibility, *id.* § 3E1.1. Smith challenges both findings on appeal. We uphold the district court's determination that Smith is a career offender, but vacate his sentence and remand for resentencing because the

court injected extraneous comments into the sentencing proceeding and did not adequately explain its basis for denying an adjustment for acceptance of responsibility.

From late 2007 until his arrest in early 2008, Smith participated in a conspiracy to distribute cocaine. He cooperated with authorities after his arrest and pleaded guilty later that year. In March 2009, Smith was released on bond pending sentencing and moved in with his mother. Soon after, Smith's probation officer prepared a presentence report recommending a 3-level decrease for acceptance of responsibility.

The events after Smith's release are at the heart of this appeal. At some point between March and June 2009, an armed robbery occurred at the home of Smith's mother. In June 2009, a confidential informant told local authorities that Smith, a felon, had three guns in his mother's house. Milwaukee police officers obtained a search warrant, found a gun, and arrested Smith. Within days federal prosecutors had obtained a second indictment against Smith, this time for possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). The district court revoked Smith's bond based on this arrest and indictment. Approximately two and a half months later, in August 2009, the government dismissed the § 922(g)(1) indictment. Around the same time, the Milwaukee County Circuit Court revoked Smith's parole for an earlier state crime due to his arrest.

In February 2010, the probation officer drafted an addendum to the presentence report based on representations made by the prosecutor, in which the probation officer opposed Smith receiving an adjustment for acceptance of responsibility. In this addendum, the probation officer recounts "information" received by the prosecutor that Smith had dealt drugs, possessed guns, robbed people in his home, and confronted gang members, all while on bond in the federal case. The addendum does not identify the prosecutor's source, and no corroborating evidence is mentioned. The addendum also discloses the § 922(g)(1) dismissal, and relates that Smith had told the government about the armed robbery at his home during an interview and had denied owning the gun found in his bedroom.

Three days after the probation officer released this addendum, the federal prosecutor amended his previously filed motion for a reduced sentence under U.S.S.G. § 5K1.1. The prosecutor requested a 30% reduction in both § 5k1.1 motions, and in his amended § 5k1.1 motion, the prosecutor for the first time attempted to explain what happened during Smith's release. The government presented new information about the robbery, recounting that an informant (apparently the same source who provided probable cause for the state search warrant) had told authorities that Smith participated in the robbery of a drug dealer at the house. The government also represented that Tamika Baldwin, a friend of Smith's sister, had given authorities a false affidavit stating that she planted the gun found in Smith's room. A

second confidential informant (not the informant whose information led to the search of Smith's home) told local authorities that Baldwin had fabricated the story in her affidavit, and that Baldwin, Smith, and Smith's sister conspired to provide this false information. The government also described how further investigation suggested that one of Smith's associates had hidden the gun in his bedroom immediately before the police arrived. Consequently, the government dismissed its charge against Smith for possession of the firearm.

At sentencing, the prosecutor expressly declined to argue for or against an adjustment for acceptance of responsibility. The prosecutor also observed that (1) Smith was present at his mother's home during the robbery, though his involvement, if any, remained uncertain; (2) the police found a gun under Smith's pillow, though who owned it and Smith's knowledge of it remained unclear; and (3) Smith knew that Baldwin claimed to have planted the gun, though it is unclear if he thought she had lied. The prosecutor ended his discussion by requesting a sentence 30% below the Guidelines imprisonment range.

During his allocution, Smith insisted that he bore no responsibility for the robbery at his mother's home, that someone had planted the gun in his bedroom, and that the conflicting information about the gun obtained from the informants and the government's investigation showed that at least one informant had lied. Smith also spoke for the first time about the robbery, recounting that someone entered his residence and robbed a close friend. The victim contacted the police, but Smith did not file a separate report. Smith said that he and his family felt responsible because the robbery had occurred in their home, so Smith and his family "got the money" back and reimbursed his friend.

The district court first found that Smith is a career offender, *see* U.S.S.G. § 4B1.1, because of his prior Wisconsin convictions for armed robbery and fleeing the police in a vehicle. The court then concluded that Smith did not merit an adjustment for acceptance of responsibility because, according to the court, he had not ended his criminal conduct or rejected his criminal associations. But the court did not resolve any of the underlying factual disputes. The district court stated that, "regardless of the version of events, it's not exactly something that suggests acceptance of responsibility." The Judge also said that he did not know if Smith was responsible for the gun or the Baldwin affidavit:

> [A]lready said we're not going to ever know the real story about the gun under the pillow and whether or not you agreed with your sister about sending that letter stating it was a plant. . . . [Y]our whole life suggests you've been living in complete and total deception. . . . People that you work or associate with they lie to you, they cheat, they're violent.

Towards the end of the hearing, however, the Judge indicated that he *did* take into account Smith's arrest for the gun, stating "the Court factored into the lack of acceptance of responsibility—it was related to the conduct that was, in turn, the conduct that got him revoked . . . ."

The Judge also engaged in an extended discussion of topics that lie outside of the record. He linked Smith's actions to the national and international repercussions of drug trafficking, describing Smith as being part of "a grand criminal enterprise" that brings cocaine into the United States from Mexico and is "ruining Mexico." The Judge remarked on President Obama's visits with Mexican President Felipe Calderon, Mexican gangs, border violence, and the high kidnaping rates in Arizona, concluding that "this is all created by people like you." The Judge also discussed the enormous fiscal and human cost of drug crime before connecting Smith's actions to broader issues of urban decline, and lamented the current state of neighborhoods he and his family members used to frequent. In describing one such neighborhood, the Judge concluded: "You're sucking us dry, Mr. Smith. . . . Those houses are still standing there, but the people have changed. And it's people like you that are ruining it. Your family's ruining it."

The district court calculated a total offense level of 34 and a criminal history category of VI, resulting in a total imprisonment range of 262 to 327 months. The court granted the government's amended § 5K1.1 motion, effectively reducing the imprisonment range by 30% to 183 to 229 months. The court announced from the bench a prison term of 183 months, but later awarded Smith 7 months as credit for time served on his state conviction, resulting in a final sentence of 176 months.

We initially dispose of Smith's argument that his Wisconsin conviction for fleeing the police in a vehicle, *see* Wis. Stat. § 346.04(3), is not a "crime of violence" for purposes of the career-offender Guideline, U.S.S.G. § 4B1.1, and thus he does not qualify under that section. We recently held otherwise in *United States v. Dismuke*, 593 F.3d 582, 596 (7th Cir. 2010), and are unpersuaded by Smith's contention that *Dismuke* was wrongly decided. *See Welch v. United States*, 604 F.3d 408, 424-25 (7th Cir. 2010).

Smith next argues that the record does not support the district court's refusal to grant him an adjustment for acceptance of responsibility. When reviewing a sentence, we first ensure that the district court provided a fair process. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Figueroa*, __ F.3d __, 2010 WL 3528847, at *4 (7th Cir. Sept. 13, 2010). The court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. Federal Rule of Criminal Procedure 32 elaborates that a court must rule on a "controverted matter . . . or determine that

a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." FED. R. CRIM. P. 32(i)(3)(B).

The district court's comments at sentencing ventured too far from the record and provided an insufficient factual basis for its sentencing determination. The Judge's extraneous discussion during sentencing was inappropriate. We discussed similar comments in *Figueroa*, 2010 WL 3528847, at *3-4, and *United States v. Wilson*, No. 09-3823, 2010 WL 2680511, at *3 (7th Cir. July 6, 2010). In *Figueroa*, we reversed a sentence because the Judge in that case had referenced matters outside of the record that undermined the stated basis for the sentence, including mentioning Hitler, Hugo Chavez, and Mexico's relation to the drug trade. *Figueroa*, 2010 WL 3528847, at *2-5. In *Wilson*, we were similarly "troubled" by the Judge's discussion of the "local, national, and international implications of the drug trade," such as border violence, Columbian guerillas, and the effect of drug violence on the Judge's childhood neighborhood, but we concluded that the district court sufficiently based its sentence on factors enumerated in 18 U.S.C. § 3553(a). *Wilson*, 2010 WL 2680511, at *2-3. The Judge made similar comments during sentencing in this case, including references to border violence and a now-violent neighborhood in Milwaukee. We appreciate "that sentencing is an individual, and at times idiosyncratic, process." *Figueroa*, 2010 WL 3528847, at *4. Smith is no saint, as his criminal history and conviction in this case attest, but it is inappropriate to blame him for issues of broad local, national, and international scope that only tangentially relate to his underlying conduct. *See id*. As in *Figueroa*, we cannot know whether these considerations influenced Smith's sentence, thereby occluding the perception of fair sentencing and preventing meaningful appellate review. *See id.*

Moreover, reversal is necessary because in refusing to give Smith credit for acceptance of responsibility, U.S.S.G. § 3E1.1, the district court did not comply with Rule 32's command to resolve contested factual issues that will affect a sentence. The application of § 3E1.1 is a factual finding reviewed for clear error. *United States v. Sellers*, 595 F.3d 791, 793 (7th Cir. 2010). The district court conceded that it did not know if Smith possessed the gun and made no finding regarding whether someone planted it in Smith's bedroom, and yet the court stated that it took the presence of the gun into account in denying acceptance points. If Smith did not know about the gun—as suggested by the government's unusual step of dismissing its § 922(g)(1) indictment—then the presence of the gun in Smith's residence cannot evidence a failure to accept responsibility unless the person who hid it there was a criminal associate with whom Smith should not have been associating. *See* U.S.S.G. § 3E1.1 cmt. n.1(b). Similarly, the district court acknowledged that it did not know whether Smith had conspired with his sister to fabricate the Baldwin affidavit, and yet the court said that it was denying acceptance points because Smith had not ended his criminal conduct or disassociated from criminals—an outcome that assumes resolution of the factual dispute. Additionally, the district court did

not address Smith's statement during his allocution that he and his family "got the money" back and returned it to the victim, making it unclear whether the Judge interpreted Smith's statement as a concession of criminal conduct.

The district court's errors were not harmless. The court gave no indication that it would have imposed the same sentence even if it had found that Smith accepted responsibility. The government acknowledged at sentencing that if the court determined that Smith had accepted responsibility, then the government would move for an additional 1-level reduction under § 3E1.1(b). A 3-level reduction would have brought Smith's total offense level to 31, with a total imprisonment range of 188 to 235 months. A further 30% reduction would have equaled 132 to 164 months.

We VACATE Smith's sentence and REMAND to the district court for resentencing. Circuit Rule 36 shall apply on remand.