In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 15-2019

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BILLY J. ROBINSON, JR.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-cr-150 — **Rudolph T. Randa**, *Judge.*

———————————

ARGUED JANUARY 20, 2016 — DECIDED JULY 22, 2016

———————————

Before WOOD, *Chief Judge*, and MANION and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge.* Billy Robinson's guilty plea was routine; his sentencing hearing was not. Robinson pleaded guilty to two counts of traveling in interstate commerce to facilitate heroin distribution, in violation of 18 U.S.C. § 1952(a)(3). During his sentencing hearing, the district court went far afield in

its comments. We are left without the ability to say confidently that the sentence was imposed in accordance with the proper procedures. We therefore vacate Robinson's sentence and remand for resentencing. See *United States v. Figueroa*, 622 F.3d 739, 741 (7th Cir. 2010).

## I

Robinson's cousin, Trivon Carter, led a heroin trafficking ring from 2012 to 2014. His organization bought heroin in Chicago and sold it in Milwaukee. For most of that two-year period, Carter relied on Kathryn Du Vergey to run drugs from one state to the other. But for two months in the spring of 2014, Carter brought Robinson into the operation. Robinson might have thought this was his lucky day, but he would have been wrong: that was just when law enforcement officers were closing in on Carter's scheme. Robinson fell into the trap when he sold heroin to a confidential informant. Shortly afterward, the police arrested him, along with Carter, Du Vergey, and other conspirators.

Robinson ultimately pleaded guilty in the Eastern District of Wisconsin to two counts of traveling in interstate commerce to facilitate heroin distribution. See 18 U.S.C. § 1952(a)(3). The district court accepted his plea and later imposed a within-guidelines sentence of 84 months' imprisonment. Robinson appeals only his sentence, alleging that the district court failed properly to consider his mitigation arguments and made inappropriate comments that amount to procedural error. Because we agree that the comments during sentencing strayed so far from the record that we cannot trace the (legitimate) reasons for Robinson's sentence, we vacate his sentence and remand for resentencing.

**II**

A district court that fails properly to explain its sentence by reference to the sentencing criteria set out in 18 U.S.C. § 3553(a) commits procedural error. *Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v. Kappes*, 782 F.3d 828, 859 (7th Cir. 2015). When a district court makes "extraneous and inflammatory comments during the sentencing hearing," it "cast[s] doubt on the validity of the sentence." *Figueroa*, 622 F.3d at 741. Such a record leaves us with "no way of knowing" whether "these irrelevant considerations affected" the sentence. *Id.*; see also *United States v. Smith*, 400 F. App'x 96, 99 (7th Cir. 2010) (nonprecedential). We review *de novo* whether the district court committed procedural error during sentencing. *United States v. Dachman*, 743 F.3d 254, 261 (7th Cir. 2014).

In Robinson's case, before imposing sentence the district court engaged in several wide-ranging soliloquies on urban decay, the changing nature of Robinson's neighborhood, the "pathology" of certain neighborhoods, and the connection between Milwaukee's 1967 riots and recent protests in Baltimore, Maryland. Sentences in criminal cases must be based only on the criteria authorized by Congress. See 18 U.S.C. § 3553. The court's comments made at this sentencing were irrelevant and had no basis in the record. They therefore undermine our confidence in the fairness of the proceeding.

The sentencing hearing took a wrong turn by focusing on urban decay, social unrest, and the judge's personal experiences in the relevant neighborhood. As we have said before, "it is inappropriate to blame [a defendant] for issues of broad local, national, and international scope that only tangentially relate to his underlying conduct." *Smith*, 400 F. App'x at 99 (citing *Figueroa*, 622 F.3d at 743–44). We need not review all of

the comments made during sentencing; a few examples will suffice.

The district judge invoked his own recollections from his college days of Robinson's neighborhood, noting that many years ago it was a safe place and now it was not, because of the omnipresent drug trade. These references are troubling because they could be "understood as a personal grudge that the judge bore against [Robinson] for dealing drugs in his old neighborhood." *United States v. Wilson*, 383 F. App'x 554, 557 (7th Cir. 2010) (nonprecedential). They appear to attribute "issues of broad local [and] national … scope"—changing crime rates in cities—to Robinson's crime, when these issues at best "only tangentially relate to his underlying conduct." *Smith*, 400 F. App'x at 99. Robinson was not charged with a violent crime or a crime involving a firearm, nor did his criminal history include any such crimes.

The district judge also went too far when he suggested that Robinson's crime was related somehow to events elsewhere in the country. The court discussed its belief that Milwaukee today is similar to Milwaukee in 1967, and drew questionable—and irrelevant—parallels between Milwaukee's 1967 riots and recent protests in Baltimore over police brutality. He noted in particular some protests in Milwaukee over the Vietnam War in 1967 (12 years before Robinson was born)—protests that got in the way of his deployment to a combat zone. He wondered what would happen if something similar were to take place today, and he bemoaned the general lack of discipline, responsibility, and self-direction.

Robinson was convicted of a drug-related crime. He was not charged with or convicted of any crime involving inciting a riot. Moreover, events in Milwaukee before he was born, or

recent protests in other cities, are not relevant to Robinson's sentence. See *Smith*, 400 F. App'x at 99. And it is hard to know what the judge meant by the "pathology" of the neighborhood. A reference to general deterrence or protection of the public would have been proper, see 18 U.S.C. § 3553(a)(2)(B), (C), but blaming Robinson indiscriminately for everything wrong in that neighborhood would not.

The district court also used "colorful" language to "dispense with arguments that [it] did not appreciate." See *Figueroa*, 622 F.3d at 743. In response to Robinson's statement that his family supports him, the court said, "I don't care how nice you are. How much your family loves you. I mean, my family loves me, too." And in response to Robinson's statement that he and his fiancée intended to move to Alabama in order to leave behind negative influences in Wisconsin and Illinois, the court pointed out that Robinson had five children by four different mothers, and questioned whether he was really prepared to support all five. Robinson's childcare arrangements might be relevant to his sentence for some purposes. The fact that he has children with multiple mothers is not, however, "the real problem" (in the judge's words) that his sentence is meant to address.

While "sentencing is an individual, and at times idiosyncratic, process," this "does not excuse the court from its duty to ensure a fair process." *Figueroa*, 622 F.3d at 743–44. Because the district court did not "adequately explain its chosen sentence" with reference to the relevant criteria laid out in 18 U.S.C. § 3553(a), Robinson's sentence does not "allow for meaningful appellate review [or] promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The government argues

that if we look at the sentence as a whole, and ignore the in-appropriate comments, the district court provided enough of an explanation of its sentence for us to affirm. See *Wilson*, 383 F. App'x at 556–57 (finding no reversible error where district court made some inappropriate comments, but ultimately justified sentence based on Section 3553(a) factors). We cannot do so here. Because the district court's improper extraneous comments were interwoven with its consideration of the Section 3553(a) factors, "[w]e have no way of knowing how, if at all, these extraneous considerations influenced [Robinson's] sentence." *Figueroa*, 622 F.3d at 744.

## III

Robinson also argues that the court erred by failing to consider his theory that his lesser involvement in Carter's operation meant that he was entitled to receive a lesser sentence than Du Vergey. This point has no merit. The district court did consider Robinson's mitigation argument before rejecting it.

A district court must give proper consideration to nonfrivolous arguments for mitigation. See *Rita v. United States*, 551 U.S. 338, 357 (2007). But the court "is not obliged to engage in a lengthy discussion of every argument for leniency that the defendant raises." *United States v. Patrick*, 707 F.3d 815, 818 (7th Cir. 2013).

Here, the district court properly explained that it considered and rejected Robinson's argument. The court acknowledged Robinson's argument by stating "your attorney … made that the argument that, you know, you're a bit player." But Robinson's criminal history outweighed that consideration, in the court's view—in fact, the court explained that

Carter chose Robinson because Carter "knew, based on what you've been doing your whole life, Mr. Robinson, that he could count on you." The district court explained that Robinson should not receive a lower sentence than Du Vergey because unlike Robinson, Du Vergey "had a criminal history category of one." The court explained that it was more lenient toward Du Vergey because she had a history of addiction to cocaine and heroin, whereas Robinson did not. This explanation is sufficient "to allow a reviewing court to assure itself that the sentence complies with Section 3553(a)." *Id.*

## IV

For these reasons, we VACATE Robinson's sentence and REMAND for resentencing. Circuit Rule 36 shall apply on remand.