NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 23, 2019
Decided February 15, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1604

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 CR 359 |
| YARMELL AUSTIN, *Defendant-Appellant.* | John Z. Lee, *Judge.* |

**O R D E R**

In this appeal, Yarmell Austin challenges the sentence he received for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court erred, he contends, by relying in part on the general plague of illegal gun use in Chicago as a reason to impose Austin's 70-month sentence. Austin also argues that one of the conditions of his supervised release—the one that requires him to remain in the district court's "jurisdiction"—is unconstitutionally vague. We conclude that the judge's

reference to gun violence does not require reversal, but we find merit in Austin's point about supervised release, and so we remand this case to the district court for the sole purpose of modifying that condition.

## I

On the night of August 10, 2015, around 2:00 a.m., Austin was bicycling on the west side of Chicago. After he rode through an alley and onto a sidewalk, two nearby police officers approached him to talk. Before they reached him, Austin fled. As he pedaled away, he held a black object, which one officer believed to be a gun. The two officers pursued him, first by car and then on foot. As one of them came close, Austin hopped off his bicycle, ran through a gangway of a private residence, and tossed the black object aside. One of the officers finally caught him in the backyard, while the second officer recovered the thrown object, which later was identified as a loaded .22 caliber firearm.

Austin was indicted for possessing a firearm as a felon. See 18 U.S.C. § 922(g)(1). (He previously had been convicted of aggravated robbery and possessing a controlled substance.) After a trial, a jury found him guilty and a presentence investigation report (PSR) was prepared. It stated that Austin's total offense level was 20 and that he had a criminal history category of VI, resulting in a recommended imprisonment range under the U.S. Sentencing Guidelines of 70–87 months and a maximum supervised-release term of three years.

At sentencing, the judge adopted the PSR's guidelines calculations after Austin had a chance to review the document with counsel. Austin argued for a 48-month sentence, while the government asked for 87 months. The government based its request on "the extreme violence and gun violence that plagues the City of Chicago" and Austin's status on parole for aggravated robbery, a crime of violence, see U.S.S.G. § 4B1.2(a). It added that gun violence "is usually perpetuated by individuals who are convicted felons," such as Austin. Therefore, it argued, a prison sentence of 87 months was appropriate for general deterrence purposes, given "circumstances in Chicago" and "across the country with gun violence."

In assessing the nature and circumstances of Austin's offense, the court echoed the government's concern about violence. It stated:

> [I]llegal possession and use of guns has caused devastation throughout our communities, particularly here in Chicago. It seems that hardly a day goes by without reading about another shooting in the city caused by the proliferation of handguns.

The court ultimately imposed a sentence within the recommended guidelines range: 70 months' imprisonment and 3 years' supervised release. In doing so, it stated that it was imposing the following condition of supervised release:

> He shall remain within the jurisdiction where he is being supervised. That is by jurisdiction I mean the federal district, jurisdiction, where the District Court sits, unless he is granted permission to leave by the Court or the probation officer.

The written judgment reflects this condition by ordering Austin to remain within the court's "jurisdiction."

## II

Austin first argues that the court erred by relying on Chicago's gun violence as a reason for imposing Austin's sentence. We review *de novo* the question whether a district court committed procedural error at sentencing. *United States v. Dachman*, 743 F.3d 254, 261 (7th Cir. 2014).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate," a sentencing judge "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49–50 (2007). These factors include "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and the need for "adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B). In addressing those factors, a sentencing judge may consider "locality-based categorical factor[s]" such as "the rise in Chicago's gun violence" when sentencing a defendant. *United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018) (relying on *United States v. Cavera*, 550 F.3d 180, 195 (2d Cir. 2008) (*en banc*)); *United States v. Flores-Machicote*, 706 F.3d 16, 22–23 (1st Cir. 2013). A judge may not, however, blame a defendant for problems of broad local, national, and international scope that relate only tangentially to the defendant's underlying conduct. *United States v. Robinson*, 829 F.3d 878, 880 (7th Cir. 2016).

Our review of the sentencing transcript as a whole satisfies us that the district court adhered to these principles. In assessing the nature of Austin's offense of illegal gun possession, the judge permissibly observed that the "illegal possession and use of guns has caused devastation throughout our communities, particularly in Chicago." See *Hatch*, 909 F.3d at 875. It is true, but not important, that the judge in *Hatch* cited statistics about gun violence in Chicago when situating the defendant's offense, 909 F.3d at 875, and here the judge did not. Rather, the judge relied on his personal experience when he noted that "hardly a day goes by without reading about another shooting in the

city… ." *Hatch* does not *mandate* the use of formal statistics; it merely permits a judge to allude to them in considering locality-based factors. See 909 F.3d at 875. Further, the judges in *Hatch* and the cases on which it relies all imposed *above*-Guidelines sentences. *Hatch*, 909 F.3d at 874; *Cavera*, 550 F.3d at 185; *Flores-Machiote*, 706 F.3d at 25. As the Supreme Court said in *Gall,* a district judge "must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall,* 552 U.S. at 46. Because Austin's sentence, at 70 months, was within—indeed, at the bottom of—the guidelines range, exacting empirical data was unnecessary.

Austin nonetheless replies that two decisions of this court require reversal, but he is incorrect. First, he relies on *Robinson,* 829 F.3d at 880. There, the sentencing judge decried local and national problems of "urban decay" and "social unrest," ranging from Milwaukee's 1967 riots to then-recent protests in Baltimore, Maryland. *Id.* The judge appeared to hold a "grudge" against Robinson for all this, even though Robinson, who had pleaded guilty to a drug crime, was not accused or convicted of violence, gun use, or inciting a riot. *Id*. At Austin's sentencing, by contrast, the judge limited his comments to the devastation caused by illegal gun possession—the very crime that Austin committed—in Chicago, coupled with Austin's personal criminal history, which included a crime of violence. Austin also relies on *United States v. Figueroa*, 622 F.3d 739, 743–744 (7th Cir. 2010). Figueroa, who is of Mexican descent, was convicted of drug crimes. In sentencing him, among other inappropriate comments, the district judge "lashed out at illegal immigration, occasionally referring to 'you people' or 'those people.'" *Id.* at 743. The judge then linked this country's illegal drug-use problem "to Mexico, then to Colombia and Venezuela, and then to Iranian terrorists through the person of Venezuelan President Hugo Chávez." *Id.* These comments "undermined anything else the court said" (even its references to the § 3553(a) factors). *Id.* at 744. Nothing resembling that digression occurred in Austin's case.

Austin also challenges the supervised-release condition requiring him to remain in the district court's "jurisdiction." He says that the condition is unconstitutionally vague for two reasons: the condition lacks an explicit *scienter* requirement and it does not define "jurisdiction." But Austin's first point is easily refuted; this supervised-release condition need not contain a *scienter* requirement. *United States v. Poulin*, 809 F.3d 924, 931 (7th Cir. 2016). True, in *United States v. Kappes*, this court observed that the condition that "the defendant shall not leave the judicial district without … permission would be improved" by adding an explicit *scienter* requirement, especially when a defendant resides near the boundary of two judicial districts. 782 F.3d 828, 849–50 (7th Cir. 2015). But in *Poulin*, we later clarified that the inclusion of a

scienter requirement, while recommended, is not mandatory. 809 F.3d at 931; see also *United States v. Givens*, 875 F.3d 387, 390 (7th Cir. 2017).

Austin's second argument about the condition fares only slightly better. Austin argues that the judge needed to explain what he meant by the word "jurisdiction" so that Austin, a non-lawyer who never finished high school, could understand it. A judge need only explain the term "jurisdiction" so that a reasonable defendant would understand it. See *United States v. Ortiz*, 817 F.3d 553, 555 (7th Cir. 2015); *Kappes*, 782 F.3d at 849–50. In *United States v. Hudson*, this court rejected the argument that "jurisdiction" is vague simply because the defendant was *personally* ignorant of the district's geographic boundaries; these boundaries are readily and objectively verifiable. 908 F.3d 1083, 1085 n.2 (7th Cir. 2018). The judge here gave an adequate oral explanation at sentencing by telling Austin that "by jurisdiction I mean the federal district, jurisdiction, where the District Court sits." The term "federal district" conveyed geographical rather than legal boundaries, and its geography is described in 28 U.S.C. § 93(a). *Cf.* U.S.S.G. § 5D1.3(c)(3) ("The defendant shall not knowingly leave the *federal judicial district* where he or she is authorized to reside without first getting permission from the court or the probation officer.") (emphasis added).

The court in *Hudson* remanded the sentence for a limited purpose, and we think that Austin's sentence should be treated in the same way, so that the written judgment conforms to the controlling oral judgment. The travel restriction in Hudson's written judgment, as with Austin's, used the word "jurisdiction." *Hudson* ordered the district court to substitute the term "judicial district" for the word "jurisdiction" in order to reflect geographical boundaries. 908 F.3d at 1084–85. Although the government weakly protests, we prefer to follow *Ortiz*, which specifically states that there is "no reason to think" that a defendant would understand what "jurisdiction" meant, and what the boundaries of that area are. 817 F.3d at 555.

We therefore AFFIRM the district court's judgment in all respects except the use of the word "jurisdiction" in Discretionary Condition of Supervised Release #14. With respect to that point only, we remand this case to the district court so that it can substitute the "judicial district" for the word "jurisdiction" in the written judgment.