NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2020
Decided July 27, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 19-3478

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:19-CR-00072(1) |
| ANTONIO BROWN, <br> *Defendant-Appellant*. | Ronald A. Guzmán, <br> *Judge*. |

### O R D E R

Antonio Brown pleaded guilty to unlawful possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 82 months in prison—a length twice the high end of the Guidelines range. Because the district court adequately justified its above-Guidelines sentence, we affirm the judgment.

Seven months after his release from an Illinois state prison (he served four years for attempted armed robbery), Brown again encountered law enforcement. He was riding in the passenger seat of a stolen car when Chicago police stopped and searched the vehicle. Underneath the passenger-seat cushion, the officers found a semiautomatic pistol with an extended-capacity magazine holding 19 live rounds of ammunition. On the floorboard under the passenger seat, they found another large-capacity magazine

with 42 live rounds. Given his prior felony, Brown was charged with, and pleaded guilty to, one count of unlawfully possessing a firearm. *See* 18 U.S.C. 922(g)(1).

The government and the PSR both recommended a sentence within the applicable Guidelines range of 33 to 41 months. The government emphasized that the gun was "extra dangerous" and that the "only possible purpose" for carrying 61 rounds of ammunition would be "to rain down a large amount of bullets in a short amount of time." The offense was not a "one-time, split-second mistake," the government urged, pointing out that Brown's prior felony also involved a gun and that he had posted to social media several homemade rap videos and photos of him flashing firearms.

Brown argued for a below-Guidelines sentence of 24 months. His counsel discussed the mitigating circumstances of Brown's upbringing, noting, for instance, that he "was raised in a community of violence." Counsel also highlighted reasons why Brown was a strong candidate for rehabilitation: his prompt acceptance of responsibility for the offense (he expressed a desire to plead guilty on just his third court appearance); his supportive family; his plan to get married and find work; and his completion of a GED while in pretrial detention, a feat the defense considered "significant" because it shows "the potential [Brown] has to change his life."

The judge sentenced Brown to 82 months in prison, double the top of the Guidelines range, followed by three years' supervised release. Central to the court's rationale was the likelihood that Brown intended to partake in a drive-by shooting of the sort that ravages Chicago and kills innocent bystanders:

> [I]t's clear to me that a reasonable inference to be drawn from this set of facts … is that the defendant was apparently meant to be the shooter in yet another Chicago-style drive-by shooting. … This is where perpetrators are armed with semiautomatic weapons, [and they] spray bullets as fast as they can as their car passes by their designated target. … As often as not, innocent people are killed by stray bullets. As often as not, children are wounded or killed. … People have been injured while passing the time in their front lawns, while watching television inside their own living rooms. Children have to be walked to school through so-called "safe-zones," which are not safe, in order to protect them.

The judge denounced the "consistent, relentless violence" caused by drive-by shootings, emphasizing that nearly 2,000 such shootings had taken place in Chicago that year. "No one," the judge added, "should have to live with people like this defendant driving

around their neighborhoods in automobiles with half a hundred bullets and guns to shoot them."

The judge then addressed Brown's personal attributes, which he believed made Brown a "poor candidate for rehabilitation." At 25 years of age, Brown had not held a job for "more than seven months," and he committed the unlawful-possession offense within a year of being released from prison. The judge also deemed Brown "unrepentant," noting that he posted photos of firearms to social media "[i]n spite of the fact that his siblings ha[d] been killed … and that he himself ha[d] been shot on multiple occasions." An above-Guidelines sentence was "absolutely necessary," the judge concluded, because Brown's prior "48 months [in state prison] was totally insufficient to even delay, much less deter, repetitive criminal conduct."

Given our deferential abuse-of-discretion standard of review, Brown faces an uphill battle in challenging the length of his sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007). On the other hand, when, as here, a district court imposes a sentence that includes an extreme variance, it must offer a more compelling justification consistent with the factors listed in 18 U.S.C § 3553(a). *See id.* at 49–50. We are more likely to uphold a sentence as reasonable if the district court's rationale is sufficiently particularized to the circumstances of the case. *United States v. Bradley*, 675 F.3d 1021, 1026 (7th Cir. 2012); *see also United States v. Miller*, 601 F.3d 734, 739–40 (7th Cir. 2010).

Brown primarily contends that his sentence was unreasonable because the judge based the extreme upward variance on speculation that Brown intended to participate in a drive-by shooting. The judge focused on rampant gun violence in Chicago, a rationale Brown calls "neither reasonable nor appropriate" because he himself had not been accused of participating—or intending to participate—in any shooting incidents.

True, the judge's inference that Brown is a likely candidate to participate in a drive-by shooting was speculative and thus would not by itself have compelled such a significant variance. Nothing in the record—apart from the fact of Brown's proximity in the car to a loaded gun—suggests that a drive-by shooting was his aim. To the extent the judge meant for the sentence to generally deter drive-by shootings, doing so would be improper if it were unrelated to the underlying facts of the case: "[I]t is inappropriate to blame [a defendant] for issues of broad local … scope that only tangentially relate to his underlying conduct." *United States v. Robinson*, 829 F.3d 878, 880 (7th Cir. 2016) (vacating the sentence when the "court engaged in several wide-ranging soliloquies on urban decay" that "had no basis in the record") (quotation marks omitted) (alteration in original).

Even so, the judge offered other reasons consistent with § 3553(a) that support the upward variance. *See Bradley*, 675 F.3d at 1026 (noting that an improper consideration "is just one of many reasons the judge gave for a sentence outside the guidelines range, the sentence will be affirmed") (quotation marks omitted). The judge explained that the upward variance was necessary to account for the circumstances of the offense (the quantity of ammunition and the fact that the offense occurred less than a year after Brown's release from prison); deterrence (his prior sentence of 48 months was "insufficient to delay, much less deter" further criminal activity); and Brown's history and characteristics (his sparse employment record, prior gun-related conviction, lack of repentance, and evident pride in his association with guns—as reflected in social-media posts—despite the fact that he and his siblings had previously been shot). In light of these determinations and even without crediting the judge's speculation that Brown was planning to participate in a drive-by shooting, the upward variance was reasonable.

Brown also argues that two of the judge's stated reasons for the upward variance were impermissible: his unemployment record and criminal history. He contends that the policy statements under the Sentencing Guidelines bar the district court from considering his unemployment record as a basis for an upward departure. *See* U.S.S.G § 5H1.5 ("Employment record is not ordinarily relevant in determining whether a departure is warranted."). But the policy statements, like the Guidelines themselves, are advisory, *see United States v. Booker*, 543 U.S. 220, 246–47 (2005), so the "consideration of [a defendant's employment history] is not strictly prohibited," *United States v. Ross*, 501 F.3d 851, 854 (7th Cir. 2007). Finally, Brown maintains that the judge could not base an upward variance on his criminal history because it was already accounted for in the calculated Guidelines range. But the judge was "entitled to consider the defendant's full criminal history and to impose a sentence tailored to his record." *United States v. Vasquez-Abarca*, 946 F.3d 990, 995 (7th Cir. 2020); *see also United States v. Kuczora*, 910 F.3d 904, 908 (7th Cir. 2018).

AFFIRMED