In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 22-1289

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELVIN SALDANA-GONZALEZ,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21 CR 122 — **John F. Kness**, *Judge.*

---

ARGUED JANUARY 11, 2023 — DECIDED JUNE 14, 2023

---

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Elvin Saldana-Gonzalez was con-victed of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to an above-guidelines term of 78 months in prison. On appeal, Sal-dana-Gonzalez challenges the sentence on procedural and substantive grounds. We affirm.

**I**

Saldana-Gonzalez did not have an easy upbringing. Born in Puerto Rico and raised by his blind mother, he was placed in foster care when he was five. His foster family abused him, which forced him to move back with his mother. At age 10, he lost his childhood memories after a car accident left him with amnesia. His mother then sent him to Milwaukee to live with an alcoholic uncle, who neglected him. Attempting to extricate himself from that situation, he moved to Chicago to live with his uncle's friend, whom he barely knew. Perhaps unsurprisingly, Saldana-Gonzalez joined a street gang as a teenager. By the time he was 18 years old, he had been convicted twice of unlawful possession of firearms. At age 19, he shot and killed one member of a rival gang and injured another. A state court convicted him of murder and attempted murder and sentenced him to 38 years in prison.

After spending 18 years behind bars, Saldana-Gonzalez was released on parole. But a year and a half later, he was back in trouble. In May 2019, he was driving his car in Chicago when police officers conducted a traffic stop. Saldana-Gonzalez pulled over, jumped out of the vehicle, and fled while holding a semi-automatic stolen pistol loaded with 14 rounds of ammunition. Although he discarded the weapon in a dumpster, the officers eventually apprehended him and recovered the firearm.

Saldana-Gonzalez pleaded guilty to one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). At the sentencing hearing, the parties and the district court agreed that the applicable sentencing-guidelines range was 37 to 46 months. Arguing in favor of a 37-month sentence, Saldana-Gonzalez accepted responsibility for his

actions, underscored how his childhood traumas had affected him, and explained that he had been carrying a weapon for protection given his gang-related past. Emphasizing Saldana-Gonzalez's extensive criminal history, the government recommended a high-end, 46-month sentence.

At the end of the hearing, the district court stated that it needed additional time to ponder the correct sentence. Eight days later, the court orally announced its decision, which it supported with a detailed discussion spanning 20 pages of the hearing transcript. It began by explaining the penological goals and factors of sentencing outlined in 18 U.S.C. § 3553(a). The court then addressed Saldana-Gonzalez's traumatic upbringing and his acceptance of responsibility, acknowledging that they were mitigating factors. But Saldana-Gonzalez's offense, criminal history, and recidivism deeply troubled the court. After remarking that he had committed "two of the most serious crimes a person can commit," the court observed that it could not "think of anything that's a whole lot more concerning than a previously convicted murderer running from the police with a gun in his hand. It is extremely aggravating."

The district court concluded its pronouncement with the following statement:

> When I look at your criminal history, your criminal history is entirely firearm-centric. And if you didn't feel compelled not to go around with a gun—I don't care how much danger you feel you were in; I feel in danger every single day when I drive on the expressway. I do. And I'm sorry, sir, it's because of people like you. It really is. It's because of people like you who have absolutely no respect for the law.

…

And this city is—it's as bad as it has been for as far back as I can remember, and I've lived here my entire life. We have shootings going on everywhere. There was a shooting last week a mile from where I grew up in a fairly lower-middle class but otherwise quiet southwest suburb. We never had shootings when I grew up. Ever. And yet a pregnant woman was shot on Route 83 in the middle of the day.

The district court sentenced Saldana-Gonzalez to an above-guidelines term of 78 months in prison. On appeal, Saldana-Gonzalez contends that the sentence was procedurally and substantively unreasonable.

**II**

A district court must adequately explain its sentence in reference to the criteria set out in 18 U.S.C. § 3553(a). See *United States v. Robinson*, 829 F.3d 878, 880 (7th Cir. 2016) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)). The court's explanation must be sufficient "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. We address *de novo* any alleged procedural errors at sentencing. *United States v. Jerry*, 55 F.4th 1124, 1130 (7th Cir. 2022).

A

Saldana-Gonzalez first argues that the court procedurally erred by relying on its personal fears and laying blame for Chicago's general gun-violence problem at his feet. Sentencing courts should avoid "extraneous and inflammatory comments" that may "cast doubt on the validity of the sentence." *United States v. Figueroa*, 622 F.3d 739, 741 (7th Cir. 2010).

Nonetheless, courts may situate a defendant's firearm offense "against the backdrop of statistics and observations about widespread gun violence in [the area]." *United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018). At the same time, "it is inappropriate to blame [a defendant] for issues of broad local, national, and international scope that only tangentially relate to his underlying conduct." *United States v. Smith*, 400 F. App'x 96, 99 (7th Cir. 2010) (citing *Figueroa*, 622 F.3d at 743–44).

The district court trod on dangerous ground when it attributed a personal fear of driving on the expressway to "people like [Saldana-Gonzalez]." Saldana-Gonzalez was convicted of a non-violent offense of unlawful possession of a firearm, not a drive-by shooting. Though the court was entitled to discuss Saldana-Gonzalez's offense in the broad context of gun violence in Chicago, the remark is questionable because it implies that the court partly blamed Saldana-Gonzalez for issues that "only tangentially relate to his underlying conduct." See *id.* Nothing in the sentencing process should give the impression that individual defendants may serve as scapegoats for judges' frustrations with a particular city's social ills.

Although the district court walked a fine line, we are satisfied on this record that its observation did not cross over to the type of "extraneous and inflammatory" comments that would require remand. See *Figueroa*, 622 F.3d at 741. We have found error only in circumstances far more egregious. For instance, the sentencing court in *United States v. Robinson* engaged in "several wide-ranging soliloquies on urban decay, the changing nature of [the defendant]'s neighborhood, the 'pathology' of certain neighborhoods, and the connection between Milwaukee's 1967 riots and [then-]recent protests in

Baltimore, Maryland." 829 F.3d at 880. And in *United States v. Figueroa*, the sentencing court unleashed a tirade on illegal immigration and drug trafficking in Mexico, Colombia, and Venezuela, sprinkling its speech with references to Hugo Chavez, Iranian terrorists, and Hitler's dog. 622 F.3d at 743. The district court's comments here do not come close to those in *Robinson* or *Figueroa*.

Saldana-Gonzalez further argues that the district court demonstrated a personal grudge against him when it made the comments quoted above about its old neighborhood and a recent shooting. Saldana-Gonzalez relies on *United States v. Wilson*, where the sentencing judge noted that the location of the defendant's crime "[was] particularly poignant … because that's the neighborhood [the judge] grew up in." 383 F. App'x 554, 557 (7th Cir. 2010). We explained that the judge's digression was "troublesome" because "it can be understood as a personal grudge that the judge bore against [the defendant] for dealing drugs in his old neighborhood." *Id.*

Although it would have been better for the court to refrain from such personal comments, we are satisfied that there was no reversible error here. Unlike in *Wilson*, the district court mentioned its personal experience only to illustrate Chicago's gun violence, using an example that was unrelated to Saldana-Gonzalez's crime. See *id.*; see also *United States v. Austin*, 760 F. App'x 456, 458 (7th Cir. 2019) (affirming sentence where sentencing judge relied on personal experience by stating, "hardly a day goes by without reading about another shooting in the city caused by the proliferation of handguns"); *United States v. Autullo*, No. 95-1020, 1995 WL 417577, at *3 (7th Cir. Jul. 12, 1995) (holding sentencing judge's personal considerations "did not demonstrate personal animus but

were [a permissible] expression of outrage at the great harm and tragic results" of defendant's crimes).

In fact, Saldana-Gonzalez's reliance on *Wilson* may cut against him. Although we highlighted the troublesome nature of the *Wilson* court's digressions—which also included irrelevant comments about President Obama's visit to Mexico and the Revolutionary Armed Forces of Colombia (also known as "FARC")—we emphasized that "it would be a mistake to take that one passage in isolation." 383 F. App'x at 557. Instead, we affirmed because "[t]aken as a whole, the sentencing transcript demonstrate[d] that the court based its sentence on considerations authorized by the law." *Id.*; see also *Autullo*, 1995 WL 417577, at *1 (refusing to "disturb a district court's sentence because of inclusion of an improper factor if other justifiable considerations support the sentence").

The record here similarly demonstrates that the district court addressed the section 3553(a) factors and sentenced Saldana-Gonzalez based on "considerations authorized by the law." See *Wilson*, 383 F. App'x at 557. The court carefully considered Saldana-Gonzalez's upbringing and personal history. Recognizing that Saldana-Gonzalez "was not dealt a good hand in life," the court stated, "I can empathize with you that that led to the path you're on now and that led you to this spot here today. I think that is mitigating." Because of his background, the retributive punishment aspect of the sentence "[did not] motivate [the court] so much in this case." Instead, the court underscored the need to "protect the public from [Saldana-Gonzalez's] future crimes." It reasonably saw his decision to flee from police officers with a loaded stolen gun after spending 18 years in prison for murder and attempted murder as "extremely aggravating." Thus, acknowledging

that "[t]here's debate whether the data backs up general de-terrence," the court emphasized that "to the extent that other people out there get the message that at least one judge in this district is very concerned about the level of violence … maybe that will have a deterrent effect on others and help protect our beleaguered public."

In light of the court's detailed explanation and careful bal-ancing of the section 3553(a) factors, we hold that the sentence passes muster despite the brief troublesome remarks.

B

Saldana-Gonzalez's second procedural attack fares no bet-ter. He argues that the district court's starting point was the statutory maximum of 120 months, and that it discounted from that starting point to arrive at the 78-month sentence. In doing so, he continues, the court improperly disregarded the guidelines range. We see its process differently.

The guidelines "suppl[y] 'the starting point and the initial benchmark,' but nothing more." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) (quoting *Gall*, 552 U.S. at 49). Courts should "make an individualized assessment based on the facts presented" and consider the section 3553(a) factors to determine the appropriateness of the sentence. *Gall*, 552 U.S. at 50. "If [the district judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*

The district court stated that it was "mindful of the Su-preme Court's admonition in *Gall*." It knew that it "needed to consider [the guidelines range] seriously," explaining that it "view[ed] them as an invaluable tool to help [it] avoid

spitballing when it comes to criminal sentences." "The farther I vary," the court noted, "the more justifications I need to give." And as outlined above, that is exactly what the district court did. At the outset of the sentencing hearing, the court properly calculated the guidelines. It moved on to the section 3553(a) factors and explained that the "main driving factors" for the upward variance were "the need to protect the public from [Saldana-Gonzalez's] crimes" and the "deterrent effect [that the sentence may have] on others." The court's explanation was sufficient to justify its choice of sentence. See *id.*

## III

Finally, Saldana-Gonzalez claims that the district court's sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Daoud*, 980 F.3d 581, 591 (7th Cir. 2020).

Saldana-Gonzalez contends that the court failed to address his offense conduct, juvenile history, and the general lack of evidence surrounding deterrence. But as we already explained, the court adequately considered his upbringing and the context of his offense. Moreover, "[section] 3553(a)(2)(B) specifically permits judges to consider general deterrence, so the court's focus on deterring others was reasonable." *United States v. Irving*, No. 22-1258, 2022 WL 17576552, at *3 (7th Cir. Dec. 6, 2022) (citing *United States v. Sunmola*, 887 F.3d 830, 842 (7th Cir. 2018)). Saldana-Gonzalez's "argument seems to challenge the weight that the court gave the § 3553(a) factors—a challenge that we have repeatedly rejected." *Id.* (citing *United States v. Dickerson*, 42 F.4th 799, 807 (7th Cir. 2022)).

\*       \*       \*

We AFFIRM Saldana-Gonzalez's sentence.